## 54207. YOUNGBLOOD v. MOCK.

BELL, Chief Judge.

Plaintiff brought suit alleging that defendant as her agent breached his fiduciary duty to plaintiff; that defendant had wrongfully converted plaintiff's pickup truck; and that defendant had damaged her by fraud and deceit, praying for general and punitive damages and expenses of litigation including attorney fees because of bad faith. At the close of the evidence defendant's motion for directed verdict was denied. The jury returned a verdict for plaintiff in the amount of $3,500 general damages, $12,750 punitive damages, and $1,960 attorney fees and judgment was entered for these amounts. Defendant's motions for judgment notwithstanding the verdict and new trial were denied.

The plaintiff testified that after the death of her husband in September 1974, she was awarded as his widow realty and items of personalty which included shop equipment, welder's tools, etc., and several trucks, one of which was a 1974 Ford F-100 pickup. Defendant, a real estate agent, called at plaintiff's house about five months after the death inquiring about the sale of plaintiff's realty. According to plaintiff, defendant after this initial meeting, undertook to sell on plaintiff's behalf the tools and vehicles as he brought several individuals to plaintiff's premises to inspect and show the shop equipment and the trucks. On February 2, 1975, plaintiff on return to her home found taped to her door an offer made by defendant to buy the tools and all trucks for $6,000 plus defendant would assume and agree to pay the balance due on a dump truck. Plaintiff testified that she refused to accept this offer. Several days later defendant informed plaintiff that he had a buyer, a Mr. Laughinghouse, for the equipment and all of the trucks for $6,500 and the assumption of certain mortgage balances and of that figure $500 would represent defendant's commission for the sale. The next evening defendant arrived at plaintiff's home. A Mr. Day, a friend, was also present at plaintiff's request to help her in understanding the transaction. The three sat at a table and according to plaintiff, defendant "did a very bit of fast

talking and kept pushing papers for me to supposedly read, which I was not applying my mind to, and asking me to sign wherever he indicated." Plaintiff admitted "that she did not read the documents 'at least thoroughly' because she 'trusted' the defendant." Three documents signed by plaintiff at this time were a bill of sale, certificate of title, and tag receipt for the 1974 Ford pickup. It is undisputed that the title and tag receipt were signed in blank and defendant typed his name on the title and tag receipt as purchaser on the next day. The evidence is in conflict as to whether defendant's name was on the bill of sale as purchaser. At the conclusion of the transaction defendant delivered Laughinghouse's check for $6,500 and plaintiff in turn issued her check to defendant for $500 as his sales commission. Plaintiff testified that later the same evening defendant telephoned her and advised that he and Laughinghouse would be by to take delivery of the pickup truck. Shortly thereafter two people came to plaintiff's premises and obtained the Ford pickup truck. The next day plaintiff found an extra key to the pickup and she delivered it to Laughinghouse's office. Mr. Laughinghouse testified that defendant advised him that he (defendant) had some property "to sell"; that they went to plaintiff's premises and inspected the equipment and "a truck or two" on two separate occasions; that on the second occasion defendant advised that all the equipment with the exception of the 1974 Ford pickup truck F-100 was for sale. Laughinghouse offered $6,500 for the property which was accepted by the defendant and he gave defendant a check for $6,500 made payable to plaintiff. Laughinghouse also testified that when plaintiff delivered the keys to him he advised her that he did not buy the pickup truck. Laughinghouse, giving reasons therefor, expressed the opinion that the 1974 Ford pickup truck had a value of $3,000. Defendant's evidence was that his written offer to purchase, which was taped to the door of plaintiff, for $6,000 for all of the equipment and the trucks was accepted by plaintiff; that this represented the whole transaction between the parties; that he in turn sold all the equipment to Laughinghouse with the exception of the 1974 pickup truck; that the $500 check was the

"change" or the difference between the $6,500 check and the $6,000 purchase price. It was stipulated that $1,960 was a reasonable attorney fee. *Held:*

1. The court charge the jury: "Due to the confidential and fiduciary nature of the relationship between a principal and her agent the principal may be justified in relying upon the representations of her agent and in failing to read and know the contents of the various papers signed by her." Defendant excepted on the ground that the charge was not adjusted to the evidence. We hold this charge was correct. Defendant, while admitting that the charge sets forth correct principles, argues that the evidence demands the conclusion that it would apply only to Mr. Day and not to the defendant as Day was the agent of plaintiff. There was sufficient evidence presented for the jury to find that an agency relationship existed between plaintiff and defendant. Code § 4-101 provides: "The relation of principal and agent arises whenever one person, expressly or by implication, authorizes another to act for him, or subsequently ratifies the acts of another in his behalf." The cases holding to the effect that a party who can read must read, and fraud which will relieve a party who can read must be such as prevents him reading, have no application where a confidential and fiduciary relationship of principal and agent is involved. *Harrison v. Harrison,* 214 Ga. 393 (105 SE2d 214). This charge was applicable to the evidence regardless of the role that Mr. Day played in the transaction.

2. The evidence as detailed above was sufficient to support the verdict for $3,500 general damages on the basis of fraud and deceit, conversion, and breach of a fiduciary duty of an agent. It was shown that the truck had a value of $3,000. The balance of the verdict for $500 was obviously for a return of the sales commission that defendant received when he breached his fiduciary duty to plaintiff. An agent employed to sell may not purchase his principal's property without the express consent of the latter after a full disclosure of all the facts. Code § 4-204. This rule applies here and recovery of the $500 was authorized. Punitive damages are recoverable in conversion and fraud and deceit cases. *Kelly v. Ga. Cas. &c. Co.,* 105 Ga. App. 104 (123 SE2d 711). The imposition

of punitive damages was authorized where, as here, there was evidence of wilful misconduct and fraud. *Standard Oil Co. v. Mt. Bethel Church,* 230 Ga. 341 (196 SE2d 869). Attorney fees are recoverable where there has been a showing that defendant has acted in bad faith in the transaction. *Bowman v. Poole,* 212 Ga. 261 (1) (91 SE2d 770). Bad faith was likewise shown by the evidence which would permit the assessment of attorney fees. It was not error to deny defendant's motions nor to enter a judgment on the verdict.

*Judgment affirmed. McMurray and Smith, JJ., concur.*

ARGUED JUNE 28, 1977 — DECIDED SEPTEMBER 7, 1977 — REHEARING DENIED SEPTEMBER 28, 1977 — 

*C. B. Thurmond, Jr.,* for appellant.
*Harrison & Roper, J. David Roper,* for appellee.