## 58899. BENNETT et al. v. THE STATE.

BIRDSONG, Judge.

Smith and Bennett were convicted on April 19, 1978, of possession and sale of marijuana. Appellants enumerate five errors. *Held:*

### I.

Smith and Bennett contend they were denied a speedy trial and that the trial court erred in overruling their plea in bar made on that basis. They were arrested September 11, 1974. A trial three years later in October, 1977, resulted in a hung jury; appellants were tried again and convicted on April 19, 1978, three years and seven months from the date of arrest.

Appellants contend they made a jury demand in August, 1975, and that the case was set for trial four times and each time was "passed" by the state, three times for no expressed reason, and one time by "inadvertence." At no time, they say, was the state precluded from bringing the case to trial and each of the continuances was at the request of the state.

The record and transcripts of proceedings do not support these contentions of the appellants. The record reveals that appellants were first scheduled for trial in July, 1975, ten months after arrest and six months after they were indicted, but at about that time, appellants' attorney Hill notified the state by letter that he was removing himself from the case. A month later, the attorney notified the state, again by letter, that he was reinstated as appellants' attorney. That same month, August, 1975, appellants filed seven pretrial motions, including *motions to stay the prosecution* until the indicting grand jury and the petit jury composition could be investigated, examined, challenged, and quashed. One of these motions is entitled "Motion to Require that the Defendant Have an Opportunity to Select a Traverse Jury that Fairly Represents a Cross-Section of the Community of Chatham County"; it requests only that the twelve jurors who sit in judgment on the defendants be fairly constituted. Neither this nor any other pleading or document, at any time from the arrest until trial, requests or demands that a jury trial be held. On November 12,

1975 and again on August 10, 1976, the case was scheduled for trial. The case was "passed" on these dates. The trial judge recalled being requested by appellants' attorney Hill to continue the case on one of the occasions it was called to trial; the assistant district attorney recalled being asked for a continuance by appellants, or that the case was passed "due to the fact that Mr. Hill had called [the district attorney] and there was a mix-up as to whether this case was going out at that time and it was passed inadvertently." The appellants' motions requesting a stay of prosecutions had never been disposed of at this time.

On June 23, 1977, the case was again scheduled for trial, but Mr. Hill advised the court that there were motions pending, and he arranged motion hearings for August 9 and 10. On August 9, Hill withdrew all motions and advised the trial court that appellants would enter an open-ended guilty plea on August 10. The pleas were entered; the attorney requested a nine-day sentencing deferral; on August 19, he requested a thirty-day continuance of the sentencing, and this was granted until September 12. On September 12, Hill advised in open court that he no longer represented appellants and that they withdrew their pleas. Another attorney for the appellants set an October 14, 1977, arraignment date, and then requested a continuance. However, on August 26, Hill was reinstated as attorney for appellants; two days later appellants filed a motion to remove the case to federal court (which was later denied), a motion for recusal to have the trial court judge remove himself from the proceedings, a plea in bar for delay in prosecution, a motion requesting a ruling on the constitutionality of the prosecuting statute, a motion for stay of prosecution pending disposition of the federal court removal of action petition, and others. On disposition of all those motions, trial was held October 17, 1977, resulting in a mistrial. The case was not tried until April 19, 1978, because in December, 1977, and again in January, 1978, when trial dates were set, appellants' attorney requested continuances because of conflicts with the sessions of the Georgia legislature, of which he is a member. The legislature recessed in March; on April 19, 1978, the

appellants were tried again and convicted.

During all this time following their arrest, the appellants were not incarcerated, and they have not shown any actual prejudice other than the mere passage of time. At no time, until they filed their plea in bar for delay of prosecution, did appellants ask for or urge a trial or indicate or contend in any way that they were chafing under the yoke of prosecution procrastination, real or imagined. It is too plain for elaboration that the delays in this case were created and concurred in by the appellants. We do not agree that the "Motion to Require that the Defendant Have an Opportunity to Select a [Fairly Constituted] Traverse Jury" is a demand for trial operating to invoke Code § 27-1901 and authorizing appellants' discharge if not tried for two terms of court thereafter. By its terms, for whatever laudable reason, the motion sought to postpone any trial; the other motions filed by appellants specifically requested a stay of prosecution. Appellants allowed these motions to dangle in the air for nearly two years; in June, 1977, when another trial date was set, appellants pointed to the pendency of these motions as another reason for continuance. We have no difficulty in holding that the trial court was correct in denying appellants' plea in bar on these grounds. See, as authority for this ruling, *Fleming v. State,* 240 Ga. 142, 144 (240 SE2d 37); and *Powell v. State,* 143 Ga. App. 684, 685 (239 SE2d 560).

II.

A. Appellants contend they were subjected to improper character impeachment by the admission of hearsay statements. During trial a detective testified over objection that his informant in the case had told him that a subject by the name of Ronnie Smith had approximately one hundred pounds of marijuana to sell. This testimony was admissible as original evidence to explain the conduct of the detective in meeting with appellants and entering in the drug transaction with them. Code § 38-302; *Burrell v. State,* 140 Ga. App. 900, 902 (232 SE2d 172). In *Boyd v. State,* 146 Ga. App. 359 (246 SE2d 396), a statement concerning information from an informant was held to be character impeachment because the witness related that the informant had referred to the appellant Boyd as "a

known narcotics dealer." That phrase impeached Boyd's character because it refers to his general character and his conduct in other transactions (see *Felton v. State,* 93 Ga. App. 48, 49 (90 SE2d 607) and *Lewis v. State,* 59 Ga. App. 387 (1 SE2d 62)). In the testimony in the case at bar, appellants' general character and conduct in other situations is not denigrated, but the statement refers merely to the particular circumstances giving rise to the investigation and prosecution of the appellants for the crime charged. We find no merit in this enumeration of error.

B. Appellants cannot complain that an officer testified to alleged other crimes, and that another witness stated he had seen evidence in this case during another case against the defendants. In the first instance, appellants' attorney pleaded with the officer to state whether he himself had seen appellants violate the law; the officer at first responded negatively, and answered further questions evasively until, when sorely pressed on the question, he stated he had seen additional contraband removed from appellants' vehicle. In the second instance the witness was asked by appellants' attorney when had been the last occasion before trial that he had seen the bag of marijuana, to which the witness said, "Yesterday" and was further pressed to state when, before then, he had seen the bag. He answered, "[D]uring the last trial," meaning apparently the trial which had ended in mistrial. This statement, besides being one the attorney might have expected, does not of itself imply appellants had been tried for other crimes. Nevertheless, the court properly instructed the jury to disregard the answer concerning the fact that there had been another trial. However, in both these instances of testimony, the troubling answers were actively pursued by the appellants, and if they were error, they were induced. *Clyatt v. State,* 126 Ga. App. 779, 783 (192 SE2d 417); *Rozier v. State,* 126 Ga. App. 336 (1) (190 SE2d 627).

C. Appellants contend that improper comments made by the district attorney in closing arguments were impeachment of character, in that the district attorney allegedly made statements that appellants "were professional drug dealers who would be selling heroin and

cocaine next and who would kill the state's witnesses if their identity was [sic] revealed." Although the actual context of these alleged prejudicial remarks was somewhat different, nevertheless appellants made no objection until after the court's charge and no ruling was invoked on the subject, either by way of reprimanding counsel or of instructing the jury or of declaring a mistrial, and therefore even if the remarks were improper there is no ground for reversal. *Rhodes v. Rogers,* 134 Ga. 551 (68 SE 323). Any possible injury to the appellants was attributable to failure of their attorney to make the appropriate objection and motion for mistrial. *Bass v. State,* 152 Ga. 415 (110 SE 237). As to the district attorney's comment: "Suppose a hundred dollars was required to make this purchase, twenty-five pounds. On the street level, that's almost ten thousand dollars," which appellants say was not in evidence, this remark does not purport to recite evidence but supposes a hypothetical. Although appellants did object during that argument that the street value was not in evidence, no ruling, reprimand, curative instruction, or mistrial was asked (*Rhodes,* supra; *Bass,* supra) and we see no grounds for reversal.

## III.

Appellants contend the jury was not selected from an impartial panel. We know of no rule of law requiring that the jury be selected from an impartial panel, since obviously such a happy, but highly improbable, circumstance would eliminate any need for the selection process. However, we shall assume that appellants mean to contend they were not permitted to select the jury from a *qualified* panel. Appellants were not permitted to ask on voir dire whether the jurors presumed the defendants innocent and we find no error in this ruling. Counsel for the accused, on voir dire, should not ask such a technical question, but should confine questions to those which may illustrate any prejudice of the juror against the accused or any interest of the jurors in the cause. *Maddox v. State,* 145 Ga. App. 363, 364 (243 SE2d 740); *Montgomery v. State,* 128 Ga. App. 116 (195 SE2d 784).

The trial court also, after much polemic of the appellants, refused to allow the question, "Where a police officer and the ordinary citizen told a version of an

occurrence which were [sic] equally believable, would this prospective juror tend to believe the police officer as opposed to the other person?" We hold this particular question and the other forms of it proposed by appellants to be an improper invasion of the right and the responsibility of the jury to determine individual credibility in the context of the entire case. The question is not phrased or designed so as to elicit or reveal any actual bias or prejudice against the defendants such as in *Bradham v. State,* 243 Ga. 638, 639 (256 SE2d 331), or any interest in the cause. See Code § 59-705, and *McNeal v. State,* 228 Ga. 633, 635-636 (187 SE2d 271). The trial court has the discretion to limit the examination of jurors under Code § 59-705 to such issues and to prohibit general questions. *McNeal,* supra; *Hill v. State,* 221 Ga. 65, 68 (142 SE2d 909); *Curtis v. State,* 224 Ga. 870, 871 (165 SE2d 150). Nor do we think we should apply *Bradham,* supra, to the facts of this case because appellants contend they were forced to expend a peremptory strike on a juror who, it was ruled, could not be asked whether he would believe a police officer in preference to an ordinary citizen. *Bradham* held that the juror in that case should have been excused for cause because he indicated he had three sons who were law enforcement officers and therefore he was biased towards law enforcement officers. In the case sub judice, the prospective juror did answer, and stated that he would make his decisions as to credibility of the witness when the time came, based on the facts and depending on what was said and how it was said. This admirable answer reflects the basis of our previous ruling that the question was an improper invasion of the province of the jury. Moreover, the juror was actually struck by appellants after he answered the question whether he would stand by his own decision if the other eleven jurors disagreed, by saying he would act fairly and decide when the time came; appellants immediately struck the juror "in view of the juror's unwillingness to commit himself one way or the other." We find no basis whatever to apply *Bradham* to these circumstances, and no error by the trial court.

Appellants contend that one prospective juror's statement, that the indictment against appellants meant the state had a good case, tainted the minds of the jurors to

the effect that an indictment was equivalent of guilt. Appellants' attorney did not object to the statement of the juror, but pursued the line of examination even after the state's attorney objected; the juror was then excused for cause. Any prejudicial effect was therefore induced by the appellants. *Drake v. State,* 142 Ga. App. 14, 16 (1) (234 SE2d 825).

We find no substance in appellants' contention that the jury's partiality is shown by the fact that only one juror in the entire panel answered affirmatively as to whether he was impartial, and the others gave "silent no's." We are not sure what constitutes a "silent no," but find from the record that no such juror indicated that he was not impartial.

## IV.

The trial court's refusal to require the state to identify and produce the informant in this case did not wrongfully deprive appellants of their right to cross examine witnesses, and was not error. The informant tipped off the police and drove the automobile in which the prosecuting officer, who engaged in the drug transaction and arrested the appellants, was a passenger. Appellants did not file a Brady motion (see *Thornton v. State,* 238 Ga. 160, 162-163 (231 SE2d 729)), nor even a motion to disclose (see *Loder v. State,* 141 Ga. App. 665 (234 SE2d 132)); but during cross examination of the state's witnesses simply urged that the informant's identity be revealed. As held in *Thornton,* supra, at p. 163, "an absolute privilege against disclosure in every case involving an informer is impermissible *where a Brady motion is made.*" (Emphasis supplied.) We also note that Brady does not establish an inflexible principle that requires the disclosure of informants' identities or of all evidence, but only that which is "favorable to a defendant if the evidence is material to guilt or punishment." *Thornton,* supra; Moore v. Illinois, 408 U. S. 786, 794 (92 SC 2562, 33 LE2d 706). In this case, appellants made no showing of, and did not in any way call in issue, any favorability or materiality of the informant's testimony to the defense. There was, then, no request or showing which would contravene Code § 38-1102, which grants the privilege against disclosure. *Thornton,* supra, p. 163. The question of disclosure is a

matter of discretion with the trial judge (see *Boyd v. State,* supra), which in this case was not abused.

## V.

Appellants urge error on the trial court's refusal to allow their plea of nolo contendere, in that they were denied equal protection of the law. The motion of appellants to allow the plea was based on the alleged fact that three months prior to appellants' second trial, a prominent Savannah physician had been allowed to plead nolo contendere to a murder charge, and was given probation.

Appellants' motion for the entry of a plea of nolo contendere pleaded, among other grounds, that "defendants have in effect been on probation since September of 1974 [the date of arrest] without further incident," that there had been a long delay of prosecution, and that there were no victims to the crime.

The privilege of a defendant to enter a plea of nolo contendere is within the discretion of the trial court. *Smith v. State,* 76 Ga. App. 847 (2) (47 SE2d 518); Code § 27-1408. We see no abuse of that discretion in this case. As to appellants' claim of denial of equal protection of the laws, it is only in cases where laws are applied differently to different persons under the same or similar circumstances that the equal protection of the law is denied. *Baugh v. City of LaGrange,* 161 Ga. 80, 81 (130 SE 69). Assuming true appellants' allegation of the case of the physician charged with murder, and assuming that it had been properly plead, we see nothing in those circumstances that is similar to this case; and as we have no idea upon what grounds or reasons the other trial court permitted the physician to plead nolo contendere, we cannot possibly determine whether appellants were denied an equal measure of justice.

*Judgment affirmed. Quillian, P. J., and Smith, J., concur.*

ARGUED NOVEMBER 20, 1979 — DECIDED JANUARY 9, 1980.

*Bobby L. Hill, Jack Friday,* for appellants.

*Andrew J. Ryan, III, District Attorney, Stephen R. Yekel, Assistant District Attorney,* for appellee.