## 60949. BECKUM v. THE STATE.

McMURRAY, Presiding Judge.
  Defendant was indicted for murder and convicted of the lesser included offense of involuntary manslaughter in the commission of an unlawful act. Defendant's motion for new trial was filed and denied. Defendant appeals. *Held:*
  1. Defendant enumerates as error the denial of his motion for directed verdict and failure of the trial court to grant his motion for new trial on the general grounds. Defendant contends that the evidence is not sufficient to support the verdict of involuntary manslaughter in the commission of an unlawful act.
  Conflicting evidence was presented as to the circumstances surrounding the death of the victim. The uncontroverted evidence is that four persons were present at or about the time of the shooting which resulted in the decedent's death. Those present were the decedent, Charles Douglas Hope; his brother, William Manson Hope; defendant's wife; and the defendant. Alcoholic beverages were being consumed and there was evidence from which the jury might conclude that they were being consumed in rather substantial quantities.
  There is evidence that the defendant and the decedent's brother had begun drinking before 3:00 o'clock in the afternoon. Defendant picked up his wife from work, and she joined in the drinking so that the drinking had been going on for at least 3 hours before the decedent arrived at approximately 7:00 p.m. and joined in the drinking.
  It is at this point that the evidence of the parties begins to diverge, the state presenting evidence of defendant's wife sitting in the decedent's lap while telling jokes, dancing and talking. The state shows that the defendant then attempted to sell a number of items to

the decedent, including a .22 caliber rifle. According to the state's evidence the defendant, after allowing the decedent to examine the rifle, went out in the hall and then started shooting, firing at least 3 shots during which time the decedent was sitting on the couch with defendant's wife. The decedent's brother testified on behalf of the state, stating that he did not realize his brother had been shot until the decedent got up and said, "I'm going to get the hell out of here." Decedent then headed for the front door, but made it only to the hall where he fell, mortally wounded by a shot piercing the heart.

The defendant and his wife both testified, presenting an issue of self-defense. Defendant's evidence suggested that the decedent was armed with a knife (he had seen a penknife earlier) and had threatened the defendant and that he fired only when approached by decedent in a threatening manner. Insofar as this defense was established through the testimony of the defendant's wife the state attempted to remove her testimony through an attempt to impeach her by showing a prior contradictory statement made to a second brother of the decedent, T. C. Hope.

Resolution of the conflicting testimony is for the jurors, as triers of fact, and who were able to gauge the demeanor of the witnesses upon the witness stand during the trial so as to resolve the irreconcilable conflict between the evidence presented by the state's witnesses and that presented by the defendant's witnesses. The evidence presents several theories under which the jury would be authorized to conclude that the defendant caused the death of the decedent without any intention to do so by the commission of an unlawful act other than a felony. Perhaps most obvious is the possibility that the jury concluded that the unlawful act being committed was a violation of Code Ann. § 26-2908 (Ga. L. 1968, pp. 1249, 1325), as the trial court charged on the aspects of pointing a rifle at the decedent, that is, intentionally and without legal justification pointing a gun at another.

Upon our review of the trial transcript and record, we find and so hold that a rational trier of fact (the jury in the case sub judice) was authorized by the evidence presented to conclude and find beyond a reasonable doubt that the defendant was guilty of involuntary manslaughter in the commission of an unlawful act other than a felony. *Driggers v. State,* 244 Ga. 160, 161 (1) (259 SE2d 133); *Moses v. State,* 245 Ga. 180, 181 (1) (263 SE2d 916); *Gilmore v. State,* 246 Ga. 245 (271 SE2d 171).

2. The trial court did not err in sustaining the state's objection to an inquiry of its witness as to whether he had been arrested a number of times for intoxication. The question is irrelevant to the issue of the witness' sobriety on the night in question and the inquiry

was not a proper means of impeaching the witness. A witness is subject to impeachment by introducing the record of conviction of a felony or a crime involving moral turpitude. The fact of indictment, or arrest or trial, standing alone is not a legal method of impeachment. *Favors v. State,* 234 Ga. 80, 86 (3) (214 SE2d 645).

3. The trial court did not err in excluding as irrelevant evidence the proceedings at a preliminary hearing in this case. Even if, as defendant states in his brief, the charges against defendant were dismissed at that preliminary hearing, such evidence would be irrelevant as the defendant was subsequently indicted by the grand jury. See in this regard *Johnson v. State,* 242 Ga. 822, 823 (4) (251 SE2d 563). Evidence as to what occurred at a former trial or hearing is immaterial or irrelevant unless same is offered as secondary evidence or for impeachment purposes.

4. When the jury initially returned its verdict its language was not in proper form and some question arose with the trial court and counsel as to the meaning of the verdict which read "guilty of involuntary manslaughter in an unlawful fashion." The trial court then recharged the jury as to involuntary manslaughter, Code Ann. § 26-1103 (Ga. L. 1968, pp. 1249, 1276). We find no manner in which the recharge which stated both paragraph (a), a felony violation, and paragraph (b), a misdemeanor violation, constituted an explicit acceptance of a felony violation. Such an implication cannot be drawn merely from the trial court's charge of paragraph (a) prior to charging paragraph (b). The initial verdict of the jury obviously intended a verdict of guilty of involuntary manslaughter. We find no fault with the trial court's method of recharging the jury so as to clarify whether the jury intended to state a felony or misdemeanor by its verdict. This enumeration of error is without merit.

*Judgment affirmed. Smith and Banke, JJ., concur.*

Submitted November 3, 1980 — Decided November 17, 1980.

*Howard A. McGlasson, Jr.,* for appellant.
*Andrew J. Ryan, III, District Attorney,* for appellee.