73024. TILLEY et al. v. PAGE.
(351 SE2d 464)

BANKE, Chief Judge.

The appellants sued the appellee to recover actual and punitive damages for his alleged misappropriation of a set of diamonds which had been entrusted to him for use in fabricating a ring. This appeal follows the trial court's grant of the appellee's motion for directed verdict, based on the absence of any proof of damages.

The evidence, construed most favorably to the appellants, established that in April of 1982, appellant Delores Tilley delivered two rings to the appellee, one of which was a gold band containing a cluster of seven diamonds and the other a plain gold band without stones. For the sum of $35, the appellee, who was the father of Mrs. Tilley's son's fiancee, agreed to design and fabricate a new ring from the gold and the diamonds contained in the two original rings.

Mrs. Tilley picked up the new ring in December of 1982, shortly before Christmas. Noticing that the diamonds did not appear to have the same brilliance as before, she took the ring to an Ellman's jewelry store on the day after Christmas to have them inspected. She was informed at this time that the stones in the ring were not diamonds, whereupon she proceeded to the appellee's place of business and confronted him with this information. According to Mrs. Tilley, the appellee responded by acknowledging that "there could have been a mix-up," and he assured her that he wanted to "make it right." However, she stated that when she telephoned him about the matter later, he told her she would have to talk with his attorney.

An expert gemologist called by the appellants testified that he had examined and tested the stones in question prior to trial and had determined that they were not diamonds but cubic zirconium. He further testified that they had no "intrinsic value." Mrs. Tilley testified that the original diamond ring had been purchased from Ellman's, and she presented evidence to the effect that Ellman's did not carry cubic zirconium stones in its inventory. However, the appellants presented no evidence to establish the market value of the diamonds at the time of their alleged conversion; and it was for this reason that the trial court granted the appellee's motion for directed verdict. *Held*:

1. Although we agree with the trial court that the appellants did not present any evidence from which the jury could have assessed the amount of their actual damages with reasonable certainty, we hold the evidence would nevertheless have supported a verdict in their

favor for nominal damages. "A plaintiff may recover nominal damages not only where his actual damages are minute, but also where he has not proved his actual damages by a preponderance of the evidence to the satisfaction of the jury." *Miller & Meier & Assoc. v. Diedrich*, 174 Ga. App. 249, 254 (329 SE2d 918) (1985), rev'd, in part, on other grounds, *Diedrich v. Miller & Meier & Assoc.*, 254 Ga. 734 (334 SE2d 308) (1985). We accordingly hold that the trial court erred in granting the appellee's motion for directed verdict with respect to the appellants' right to recover nominal damages from the appellee for conversion or breach of contract. Moreover, based on the evidence that the appellee had substituted virtually worthless imitation diamonds for the diamonds entrusted to him by Mrs. Tilley and had refused to return the authentic stones to her upon demand, we hold that the jury would also have been authorized to assess punitive damages against him for the wilful and knowing conversion of her property. See generally *Youngblood v. Mock*, 143 Ga. App. 320, 322 (2) (238 SE2d 250) (1977).

2. The trial court was correct, however, in concluding that the appellants had failed to establish a prima facie case against the appellee with respect to their additional claim for relief under the Georgia Fair Business Practices Act, OCGA § 10-1-390 et seq. Even assuming *arguendo* that the transaction occurred in "the context of the consumer marketplace" (see *Zeeman v. Black*, 156 Ga. App. 82, 83 (273 SE2d 910) (1980)), the appellants' right to recover under the Act was foreclosed by their failure to introduce evidence that they had delivered a written demand for relief to the appellee at least 30 days prior to filing suit, as required by OCGA § 10-1-399 (b).

3. The appellee's contention that the action was barred by OCGA § 9-3-32 because it was not brought within two years of the date of the alleged conversion is clearly without merit. Pretermitting such issues as when the alleged conversion occurred and whether there was evidence of such fraud as would toll the running of the statute, OCGA § 9-3-32 establishes a 4-year limitation period for conversion actions, not a 2-year period.

4. The appellants enumerate as error the court's admission, for impeachment purposes, of evidence that Mrs. Tilley had previously been convicted of shoplifting based on a plea of nolo contendere. It is contended that such use of a conviction based on a nolo plea is violative of OCGA § 17-7-95, which provides in pertinent part, as follows: "(c) *Except as otherwise provided by law*, a plea of nolo contendere shall not be used against the defendant in any other court or proceedings as an admission of guilt or otherwise or for any purpose; and the plea shall not be deemed a plea of guilty for the purpose of effecting any civil disqualification of the defendant to hold public office, to vote, to serve upon any jury, or any other civil disqualification im-

posed upon a person convicted of any offense under the laws of this state. . . ." (Emphasis supplied.)

Mrs. Tilley's shoplifting conviction was not sought to be used as a conclusive admission by her of her guilt of that offense, nor to effect a civil disqualification, as prohibited by OCGA § 17-7-95 (c). Rather, it was offered merely as a factor to be considered by the jury in assessing her credibility as a witness. It is, of course, well settled that a witness in a civil case may be impeached by proof that he or she has at some time been convicted of a felony or other crime involving moral turpitude. See *Giles v. Jones*, 169 Ga. App. 882 (315 SE2d 440) (1984). See also *State v. Byrd*, 255 Ga. 665, 666 (341 SE2d 455) (1986). Indeed, the trend in recent years has been towards increasing liberality in allowing such evidence. For example, in *Favors v. State*, 234 Ga. 80 (214 SE2d 645) (1975), and *Gilstrap v. State*, 250 Ga. 814 (2) (301 SE2d 277) (1983), the Supreme Court held that a certified copy of a criminal conviction was admissible to impeach a prosecution witness in a criminal case, even though the conviction had been entered under the provisions of the First Offender Act (OCGA § 42-8-60 et seq.) and was thus, technically speaking, not a conviction at all. See also *Hightower v. Gen. Motors Corp.*, 175 Ga. App. 112, 113 (332 SE2d 336) (1985) (allowing First Offender convictions to be introduced for impeachment in civil cases); *James v. State*, 160 Ga. App. 185 (286 SE2d 506) (1981) (holding that a criminal conviction may be used for impeachment even though it is not final but is the subject of a pending appeal); and *Giles v. Jones*, supra (holding that a criminal conviction is relevant and admissible for impeachment notwithstanding the amount of time which has passed since it was entered).

While in the 1961 case of *Clinkscales v. State*, 104 Ga. App. 723 (5) (123 SE2d 165) (1961), this court held that a conviction entered on a nolo plea was not admissible for impeachment purposes, we believe this authority has been severely eroded by subsequent cases such as those cited above. In the face of such authorities, it would be anomalous to hold that a jury in a civil case could not be apprised of a witness's prior conviction of a felony or other crime involving moral turpitude simply because that conviction was based on a plea of nolo contendere rather than on a jury verdict or a plea of guilty. Consequently, we overrule the holding in Division 5 of *Clinkscales*, supra. Because shoplifting is a form of theft or larceny and because such offenses have previously been held to involve moral turpitude (see *Perry v. State*, 173 Ga. App. 541 (4) (327 SE2d 527) (1985)), we accordingly hold that the trial court in the present case was authorized to admit a properly certified copy of Mrs. Tilley's shoplifting conviction for consideration by the jury as impeachment evidence, subject, of course, to her right to explain the circumstances surrounding the conviction. See *Belvin v. Houston Fertilizer &c. Co.*, 169 Ga. App. 100

(2) (311 SE2d 526) (1983).

*Judgment reversed. Deen, P. J., McMurray, P. J., Birdsong, P. J., and Sognier, J., concur. Carley, Pope, Benham, and Beasley, JJ., concur in Divisions 1, 2, and 3. Benham and Pope, JJ., dissent as to Division 4. Carley and Beasley, JJ., dissent as to Division 4 in judgment only.*

BENHAM, Judge, concurring in part and dissenting in part.

While I concur in Divisions 1, 2, and 3 of the majority opinion, I must respectfully dissent as to Division 4, since I consider it to be a headlong rush to give the nolo contendere plea the coup de grace.

The issue brought into focus by Division 4 is whether a nolo contendere plea should be admissible in a civil action for impeachment purposes. Were I writing merely for the moment I would have little difficulty in siding with the majority, but since I write for posterity, my vision must be future-oriented.

The legislature in its wisdom spoke emphatically on the effect of a nolo contendere plea: "Except as otherwise provided by law, a plea of nolo contendere shall not be used against the defendant in any other court or proceedings as an admission of guilt or otherwise or for any purpose; and the plea shall not be deemed a plea of guilty for the purpose of effecting any civil disqualification of the defendant to hold public office, to vote, to serve upon any jury, or any other civil disqualification imposed upon a person convicted of any offense under the laws of this state." OCGA § 17-7-95 (c).

The majority notes that the nolo contendere plea here involved was not used as a "conclusive admission by her of her guilt . . . not to effect a civil disqualification," then blithely says the plea is to be admitted "merely as a factor to be considered by the jury in assessing her credibility as a witness." In so doing, the majority ignores the clear language of the statute: "a plea of nolo contendere shall not be used against the defendant *in any other court . . . for any purpose.*" (Emphasis supplied.) The majority buttresses its position by noting the trend toward liberality in admission of evidence and cites *Gilstrap v. State*, 250 Ga. 814 (2) (301 SE2d 277) (1983); *Favors v. State*, 234 Ga. 80 (214 SE2d 645) (1975); *Hightower v. Gen. Motors Corp.*, 175 Ga. App. 112, 113 (332 SE2d 336) (1985); *Giles v. Jones*, 169 Ga. App. 882 (315 SE2d 440) (1984); and *James v. State*, 160 Ga. App. 185 (286 SE2d 506) (1981). In the final analysis the majority seeks to overrule *Clinkscales v. State*, 104 Ga. App. 723 (5) (123 SE2d 165) (1961), cert. denied, 369 U. S. 888 (82 SC 1162, 8 LE2d 288) (1962), which says that a nolo contendere cannot be used to impeach a witness.

An attempt is made here to discard the clear wording of the nolo contendere statute and assign it to an anachronistic realm. This ap-

proach weighs crushingly on my mind and causes me to take a serious and in-depth look at the history of the nolo contendere plea. Research reveals that the spirit of the nolo contendere plea has a long and venerable history extending back over three quarters of a century. This history, as far as a nolo contendere plea is concerned, is one of disallowing evidence short of a conviction to impeach a witness. *Whitley v. State*, 188 Ga. 177 (5) (3 SE2d 588) (1939); *Beach v. State*, 138 Ga. 265 (1) (75 SE 139) (1912); *Davis v. State*, 169 Ga. App. 422 (1) (313 SE2d 127) (1984); *Strickland v. State*, 166 Ga. App. 702 (305 SE2d 434) (1983); *Howard v. Horn*, 163 Ga. App. 771 (2) (295 SE2d 349) (1982); *Arnold v. State*, 163 Ga. App. 10 (1a) (293 SE2d 501) (1982); *Richards v. State*, 157 Ga. App. 601 (2) (278 SE2d 63); *Beckum v. State*, 156 Ga. App. 484 (2) (274 SE2d 829) (1980); *Benefield v. State*, 140 Ga. App. 727, 735 (232 SE2d 89) (1976); *McCarty v. State*, 139 Ga. App. 101 (1) (227 SE2d 898) (1976); *Scott v. State*, 131 Ga. App. 655 (2) (206 SE2d 558) (1974); *Banks v. State*, 131 Ga. App. 215 (3) (205 SE2d 520) (1974); *Clinkscales v. State*, supra.

The following excerpted language from *Fortson v. Hopper*, 242 Ga. 81 (247 SE2d 875) (1978), at 82-83, gives a clear definition of the plea and its effect: "The plea of nolo contendere is defined as an assertion by the defendant that he does not desire to contest the truth of the charges against him. [Cit.] Thus it is not a plea of not guilty, nor is it a plea of guilty. Rather, it lies approximately midway between the two extremes. Subject to the approval and consent of the judge of the court, it may be entered in any criminal case in any court of the state, except in capital felony cases. [Cit.] The privilege of entering a plea of nolo contendere is statutory in origin [cit.], and it was designed to cover situations where the side effects of a plea of guilty, in addition to the penalties provided by law, would be too harsh. [Cit.]"

It is the harshness mentioned in *Fortson* that the majority seeks to impose here and I seek to resist. The rule that I seek to preserve and the majority seeks to scuttle is that mentioned in *Favors* at 86: "Generally a witness is subject to impeachment by introducing the record of conviction of a felony, or a crime involving moral turpitude. The fact of indictment, or arrest, or trial, standing alone is not a legal method of impeachment." The majority cites *Favors* with approval since it went on to rule that a first offender plea was admissible for impeachment purposes. However, *Favors* is easily distinguishable from the present case. There the defendant in a criminal case sought to impeach a state witness by the use of a first offender plea, and in allowing him to do so the court balanced the defendant's right to a thorough and sifting cross-examination against the witness' right to the sanctity of his first offender plea. Unquestionably, the court was correct in upholding the defendant's right to cross-examination.

Here, the majority supports its position that "the trend in recent years has been toward increasing liberality in allowing such [nolo contendere] evidence" by citing *Gilstrap v. State*, supra; *Favors v. State*, supra; *Hightower v. Gen. Motors Corp.*, supra; *Giles v. Jones*, supra; and *James v. State*, supra. *James* would not demand the majority result since it merely allowed the introduction of a conviction that was on appeal. *Giles* simply acknowledged that a conviction is admissible no matter how much time has elapsed since the conviction. *Gilstrap* appropriately applied the same balancing test applied in *Favors*.

However, in *Hightower*, which allowed the use of first offender convictions for impeachment, I joined the vigorous dissent by Judge Pope because I saw the decision as a smoldering ember that would soon burst forth into a full and devastating conflagration. The fears expressed in the *Hightower* dissent at 117-118 ring even more true today: "To allow the unrestricted use of a [nolo contendere] record for the purpose of impeachment, particularly in civil cases, would be directly contrary to the express mandate of the Act and would impose by judicial fiat a limitation, in addition to the one expressly provided by the General Assembly, on the right of [one who pleads nolo contendere] to be free from the stigma of a criminal record. I am persuaded that the General Assembly intended the Act to ameliorate the harsh consequences of a criminal conviction. . . ."

Not only is the clear language of the statute overlooked in the majority opinion, but some very practical considerations are ignored. The nolo contendere plea is not only an instrument of compassion used by the court, but it is also a tool of convenience for the State which is evidenced by the recent international dispute concerning an alleged Russian spy, Gennadiy Zakharov. There, a nolo contendere was used to avoid a major international confrontation. Other instances too numerous to mention show the need for upholding the sanctity of the nolo contendere plea.

The most important practical consideration ignored by the majority is that a nolo contendere plea is a privilege, the entering of which is subject to the trial court's discretion. OCGA § 17-7-95; *Bennett v. State*, 153 Ga. App. 21 (264 SE2d 516) (1980). Who would be in a better position than the trial judge in the criminal offense to determine if a crime showed such moral turpitude that a defendant should forfeit some or all of his civil rights? If found to be so, the trial judge could disallow the nolo contendere or impose civil forfeiture of rights as a condition of probation.

The practical considerations of not hamstringing the district attorneys by diluting the effectiveness of nolo contendere as a bargaining tool and of not destroying the legislative wisdom in showing compassion for defendants must be applied in conjunction with rules of

statutory construction, so aptly expressed by Judge Townsend in *Wright v. State*, 75 Ga. App. 764, 766 (44 SE2d 569) (1947): "In the construction of statutes it is the duty of the court to look for the intention of the General Assembly, keeping in view, at all times, the old law, the evil and the remedy. [Cit.] It is therefore the duty of the court to seek to determine the intention of the General Assembly in its passage of the Act to provide for plea of nolo contendere. This brings us to a consideration of the law existing prior to the passage of the nolo contendere statute. Prior thereto, in all cases where the defendant entered a plea of guilty, in a court of competent jurisdiction, the same could be used against him if otherwise admissible, as an admission of guilt. After plea of guilty was entered to certain specific charges or any crime involving moral turpitude, the person entering such plea was thereafter deprived of holding public office, voting and serving upon juries. The General Assembly, no doubt, had in mind that these penalties, in addition to the punishment provided for by law as to the respective offenses charged, would often be too drastic in specific instances; that ofttimes the degree of wrong surrounding the circumstances of one defendant would be so much less than that surrounding another, and yet the facts be such that no valid defense to the crime could be interposed. Also the General Assembly doubtless regarded a plea of guilty as too harsh, as applied to a person of good moral character and standing in his community, he being technically guilty of a crime, without a valid defense, and such plea often being admissible against him in other court proceedings. The foregoing being the old law and the evil, the General Assembly cast about for the remedy. Following the lead of other jurisdictions, including our Federal system of jurisprudence, provision was made for a plea of guilty that in the discretion of the court could be employed by defendants thus guilty of crime, which would authorize the court to impose the punishment fixed by statute as to the offense charged, without also carrying with it the objectionable and infamous provisions of law as herein outlined."

Today's decision reduces to insignificance the clear and unequivocal meaning of the statutory language contained in OCGA § 17-7-95. This attempt to ratchet down rights clearly granted by the legislature is an attempt to do by indirection that which is prohibited by direction. Therefore, I would affirm the trial court in the manner provided in Divisions 2 and 3 of the majority opinion. But I would reverse as provided in Division 1 of the majority opinion, and in addition I would reverse as to Division 4 for the reasons contained herein.

I am authorized to state that Judge Pope joins in the dissent as to Division 4 and that Judge Carley and Judge Beasley join in the dissent as to Division 4 in judgment only.

Decided November 12, 1986 —
Rehearing denied December 2, 1986.

*Randie Siegel*, for appellants.
*Phillip N. Lavender*, for appellee.