A03A1678. PITMON v. THE STATE.
(595 SE2d 360)

MIKELL, Judge.

A jury convicted Walter Pitmon of two counts of theft by taking. The trial court sentenced him to a total of six years, with one year to be served in a public work camp, and the balance on probation. He was also fined $2,000 and ordered to pay $2,035 in restitution to the victims. Pitmon appeals only his conviction on Count 1, which involves the property of Rosa Canales. He argues in part that the trial court erred in refusing to permit him to impeach Canales with evidence of her two nolo contendere pleas to shoplifting charges. We disagree and affirm. In so doing, however, we overrule *Tilley v. Page*, 181 Ga. App. 98, 100 (4) (351 SE2d 464) (1986).

1. Viewed in the light most favorable to the jury's verdict, the record shows that Pitmon was employed as a maintenance worker at Magnolia Hills Apartments. Yolanda Gasper, the assistant leasing manager, testified that any time a resident of the complex called in a maintenance request, a manager would write up the work order, and then one of the maintenance workers would perform the repair. The leasing managers kept a log of the work orders completed by each

maintenance worker. Keys to all 395 apartments in the complex were kept in the leasing office. When a maintenance worker was assigned a work order, he was normally given a key to the apartment needing repair.

On July 10, 2002, Canales called in a maintenance request. Pitmon was assigned the work order and given a key to the apartment. When he entered the apartment that same day, Canales was home; however, she left approximately five minutes later, and he completed the repair. The next day, Canales arrived home from work to find the front door of her apartment open. She testified that she had locked the door when she left that morning and that neither of the other occupants of the apartment had been home during the time she was at work. She did not notice anything missing immediately; however, later that week she realized that her "Winnie the Pooh" ceramic bank had been removed from her bedroom closet. Canales estimated that in addition to being full of coins, the bank contained between six and nine $100 bills. Canales reported the theft to the leasing office and to the police.

During the course of his investigation, Investigator Steven Shaw of the Gwinnett County Police Department spoke with the apartment leasing managers, Canales, and another resident, Joel Montoya, who reported that between $80 and $100 in change was missing from his apartment after Pitmon performed maintenance work there in August 2002. Investigator Shaw interviewed Pitmon, who admitted taking five or six dollars from the closet in Montoya's apartment.[1] According to the investigator, Pitmon initially denied having any contact with the closet where Canales's ceramic bank was located. However, after being asked a second time whether he was near the closet, Pitmon told the investigator that he shut the closet door in order to access the bathroom. When asked to describe the interior of the closet, Pitmon recalled seeing a "bear-like piggy bank" on the shelf. Gasper told the police that according to the log book, the key to Canales's apartment had not been returned on July 11, the date on which Canales found her apartment door open.

Pitmon argues that the evidence was insufficient to support his conviction of theft by taking. He contends that the circumstantial evidence regarding the theft of Canales's bank failed to exclude every reasonable hypothesis other than his guilt. We disagree.

Under OCGA § 16-8-2, a person commits the offense of theft by taking "when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the

---

[1] Pitmon was convicted of one count of theft by taking that involved Montoya's money. He has not appealed that conviction.

intention of depriving him [or her] of the property, regardless of the manner in which the property is taken or appropriated."

Pitmon is correct that "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6.

> When the evidence meets this test, circumstantial evidence is as probative as direct evidence, and whether this burden has been met is a question for the jury. When the jury is authorized to find that the evidence, though circumstantial, excluded every reasonable hypothesis except the defendant's guilt, the verdict will not be disturbed unless the verdict is insupportable as a matter of law.

(Citation omitted.) *Joiner v. State*, 257 Ga. App. 375-376 (1) (571 SE2d 430) (2002).

Our review of the evidence leads us to the conclusion that the jury could reasonably have found the following from circumstantial evidence excluding every reasonable hypothesis save that of Pitmon's guilt: that Pitmon was given a key to Canales's apartment; that there was no forced entry when the theft was alleged to have taken place; that Canales and Montoya both reported missing cash after Pitmon performed maintenance work in their apartments; that Pitmon admitted being in close proximity to the closet where the stolen bank was located; and that Pitmon had not returned the key to Canales's apartment to the leasing office on the date in question. Given the foregoing, the evidence was sufficient to authorize a rational trier of fact to find Pitmon guilty of theft by taking. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

We reject Pitmon's argument that the state failed to exclude other reasonable hypotheses in this case. "[W]hile circumstantial evidence must exclude every other reasonable hypothesis but the defendant's guilt, the evidence need not exclude every inference or hypothesis." (Citation omitted.) *Joiner*, supra at 376. First, Pitmon contends that one of Canales's "ex-roommates" might have returned to the apartment and stolen the bank; however, the evidence demonstrated that Canales's two former roommates moved out over one and one-half years earlier and that Canales changed the locks after they left. Next, Pitmon suggests that anyone in the complex could have walked into Canales's apartment and taken the bank while the door was open on July 11, 2002. While this scenario is within the realm of possibility, the more reasonable inference to be drawn from the evidence was that Pitmon entered Canales's apartment using the

key he had been given by the leasing office. Similarly, Pitmon's allegation that one of the other maintenance workers might have somehow obtained the key and used it to enter Canales's apartment is not reasonable, as he had not returned the key as of the date in question. Finally, Pitmon's hypothesis that Canales's husband or brother-in-law took the bank is unreasonable. There was evidence that neither of the men was home while Canales was at work. Furthermore, Canales testified that the bank held money saved by herself and her husband, and there was no evidence supporting Pitmon's allegation that Canales's husband might have stolen from her.

Accordingly, we find that the evidence adduced at trial excluded every other reasonable hypothesis except Pitmon's guilt and therefore was sufficient to support his conviction of theft by taking Canales's property. Compare *Jordan v. State*, 225 Ga. App. 424 (484 SE2d 60) (1997) (cocaine trafficking conviction based on circumstantial evidence reversed because the drugs were found outside the defendant's apartment in an unfenced common area to which a number of individuals had access).

2. In an attempt to impeach Canales on general credibility grounds, Pitmon sought to introduce evidence that she had entered nolo contendere pleas to two shoplifting charges. He assigns error to the trial court's exclusion of the pleas.

OCGA § 17-7-95 (c) unequivocally states: "Except as otherwise provided by law, a plea of nolo contendere shall not be used against the defendant in any other court or proceedings as an admission of guilt or otherwise or for any purpose." Pitmon has not cited a single criminal case in which a witness's nolo contendere plea was admitted for impeachment purposes, and our research reveals none.

However, in *Tilley v. Page*, supra, this Court held that a nolo plea could be used to impeach a witness in a civil case. In a well-reasoned dissent joined by Judge Pope, then-Judge Benham stated that in permitting admission of the plea, "the majority ignores the clear language of the statute: 'a plea of nolo contendere shall not be used against the defendant *in any other court . . . for any purpose.*'" Id. at 101 (Benham, J., dissenting in part). After reviewing the history of the nolo contendere plea, the dissent concludes that "[t]his history . . . is one of disallowing evidence short of a conviction to impeach a witness." (Citations omitted.) Id. at 102. Judge Benham raises an important point when he writes that "[t]he most important practical consideration ignored by the majority is that a nolo contendere plea is a privilege, the entering of which is subject to the trial court's discretion." Id. at 103, citing OCGA § 17-7-95; *Bennett v. State*, 153 Ga. App. 21, 28 (V) (264 SE2d 516) (1980).

As noted by the dissent in *Tilley*, the language in *Wright v. State*,

75 Ga. App. 764 (44 SE2d 569) (1947), proves particularly instructive in our consideration of the proper treatment of the nolo contendere plea. In that case, this Court sought to determine the intention of the General Assembly in its passage of the nolo contendere statute. Id. at 766 (1). We recognized that prior to the nolo plea, in all cases where a defendant entered a plea of guilty, that plea could be used against him or her as an admission of guilt. Id. Further, if the crime was one of moral turpitude, the defendant was deprived of holding public office, voting, and serving on a jury. This Court went on to reason as follows:

> The General Assembly, no doubt, had in mind that these penalties, in addition to the punishment provided for by law as to the respective offenses charged, would often [have been far] too drastic in specific instances; that ofttimes the degree of wrong surrounding the circumstances of one defendant would be so much less than that surrounding another, and yet the facts be such that no valid defense to the crime could be interposed. . . . Following the lead of other jurisdictions, including our Federal [S]ystem of [J]urisprudence, provision was made for a plea of guilty that in the discretion of the court could be employed by defendants thus guilty of crime, which would authorize the court to impose the punishment fixed by statute as to the offense charged, without also carrying with it the objectionable and infamous provisions of law as herein outlined.

Id. The above-cited reasoning leads to the inescapable conclusion that permitting the use of a nolo plea to impeach a witness's credibility in a subsequent proceeding would similarly constitute one of the drastic penalties contemplated by the General Assembly in creating the nolo statute.

Our decision today finds support in *Matthews v. State*, 268 Ga. 798 (493 SE2d 136) (1997). In that case, the Supreme Court held that evidence of a first offender record could not be used to impeach a witness on general credibility grounds.[2] Id. at 802-803 (4). The Court reasoned that under the first offender statute, OCGA § 42-8-62, there is no adjudication of guilt, and the defendant is protected against the stigma of a criminal record. Id. at 802 (4), citing *Witcher v. Pender*, 260 Ga. 248 (392 SE2d 6) (1990). The Court held that "unless there is an adjudication of guilt, a witness may not be impeached on general

---

[2] The Court overruled *Favors v. State*, 234 Ga. 80 (214 SE2d 645) (1975), which permitted use of a first offender record for impeachment purposes. Id.

credibility grounds by evidence of a first offender record." (Footnote omitted.) *Matthews*, supra at 802 (4).

The reasoning in *Matthews* applies to nolo contendere pleas as well. When the legislature prohibited the use of such a plea "against the defendant in any other court . . . for *any* purpose," it did not carve out an exception for impeachment. (Emphasis supplied.) OCGA § 17-7-95 (c). Because its holding allowing the use of a plea of nolo contendere for impeachment purposes is in direct conflict with OCGA § 17-7-95 (c), we hereby overrule *Tilley v. Page*, supra. The trial court did not err in excluding evidence of Canales's pleas of nolo contendere, and Pitmon's conviction is affirmed on this ground.

*Judgment affirmed. Smith, C. J., Andrews, P. J., Johnson, P. J., Blackburn, P. J., Ruffin, P. J., Eldridge, Barnes, Miller, Ellington, Phipps and Adams, JJ., concur.*

DECIDED FEBRUARY 18, 2004 ▮▮▮▮▮▮▮▮▮▮▮▮▮

*Tyrone M. Hodnett II*, for appellant.
*Daniel J. Porter, District Attorney, Lisa A. Jones, Assistant District Attorney*, for appellee.