### A08A1008. WALTON v. THE STATE.
(662 SE2d 820)

MIKELL, Judge.

Following a jury trial, Gregory Anthony Walton was convicted of theft by shoplifting. The court sentenced him to twelve months, with six months to be served in confinement and the balance on probation, and fined him $1,000. On appeal, Walton challenges the sufficiency of the evidence, arguing that the state failed to disprove his defense of accident beyond a reasonable doubt, and contends that the trial court erred in allowing a witness to testify to the ultimate issue in the case by giving his opinion that Walton behaved as shoplifters generally do. We disagree and affirm.

> On appeal from a criminal conviction, the evidence is viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[1]

So viewed, the evidence shows that on November 20, 2004, Owen Robert McDonald, a loss prevention employee at Wal-Mart, assigned that evening to the Whitfield County store, observed Walton select a small box of spray adhesive bandage from a shelf in the pharmacy area of the store. McDonald followed Walton to the domestics department, where McDonald heard tearing and then observed Walton place a bottle of spray bandage in his back pocket. Walton placed the torn empty box on a shelf and proceeded to the grocery department of the store. McDonald recovered the empty box. Walton then made a small purchase at the front of the store and exited to the parking lot, at which point McDonald stopped him. When confronted, Walton retrieved the bottle from his back pocket and gave it to McDonald. While Walton was in the loss prevention office, he told

---

[1] (Footnotes omitted.) *Noble v. State*, 282 Ga. App. 311-312 (638 SE2d 444) (2006).

McDonald and other loss prevention employees that "it was a stupid thing to do, a stupid mistake" and offered to pay for the item. McDonald testified that Walton never presented the item to the cashier, and could not have paid for it since "[t]he only way to purchase [the] item is through a bar code and the bar code was on the box. And I have the box and he has the item, so there's no way he could pay for it."

Walton testified at trial and denied taking the bottle of spray bandage. He explained that he brought the bottle of spray bandage to the checkout counter along with several other food items, that the cashier told him it cost $4.49, and that he decided not to purchase it, but purchased the other food items in his cart. He then exited the store and was stopped by two men, who searched his shopping bag and found the bottle. Walton testified that he had no idea how the bottle got in his bag and that he tried to explain to the men that it was a mistake, and offered to "straighten [out the] situation . . . and pay for the item." Walton had $275 in cash on his person at the time he was arrested.

1. Walton contends that the state failed to disprove his defense of accident beyond a reasonable doubt and that the evidence was insufficient to support the verdict because it was completely circumstantial and did not exclude every reasonable hypothesis save that of his guilt. Specifically, Walton maintains that the evidence supports the conclusion that he *accidentally* removed the bottle of spray bandage from the store. We disagree.

OCGA § 24-4-6 provides that "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."

> When the evidence meets this test, circumstantial evidence is as probative as direct evidence, and whether this burden has been met is a question for the jury. When the jury is authorized to find that the evidence, though circumstantial, excluded every reasonable hypothesis except the defendant's guilt, the verdict will not be disturbed unless the verdict is insupportable as a matter of law.[2]

Further, when a defendant raises the affirmative defense of accident, the state has the burden of disproving the defense beyond a reason-

---

[2] (Citation omitted.) *Pitmon v. State*, 265 Ga. App. 655, 657 (1) (595 SE2d 360) (2004). See also *Walker v. State*, 282 Ga. 406, 407-408 (1) (651 SE2d 12) (2007).

able doubt.[3] "Whether the state has satisfied this burden is a jury question."[4]

Contrary to Walton's contention, the evidence here was not circumstantial. Rather, the evidence consisted of the direct testimony of McDonald, that he observed Walton place the bottle in his back pocket and then leave the store without presenting it to the cashier.[5] Even if we considered the evidence circumstantial, the jury was authorized to reject Walton's testimony that he took the bottle by accident in favor of McDonald's testimony. The evidence was sufficient to authorize a rational trier of fact to find Walton guilty of theft by shoplifting beyond a reasonable doubt.

2. Walton contends that the trial court erred in allowing McDonald to testify to the ultimate issue in the case by giving his opinion that Walton behaved as shoplifters generally do. We do not agree.

On direct examination, the state asked McDonald how he came to pay attention to Walton. McDonald replied that "shoplifters have nervous tendencies" and Walton objected. The trial court sustained Walton's objection, pending McDonald's qualification as an expert witness. The state then questioned McDonald about his training and experience in loss prevention, but never tendered McDonald as an expert. The following colloquy transpired:

> Q: [H]ave you been taught certain characteristics to look for as possible clues as it relates to shoplifting?
> A: Yes, sir.
> Q: What are the sorts of things in your training that you were taught to look for?
> A: One of the more popular things to look for are people who are looking around a lot or looking for cameras in the sky.
> Q: When you say looking around a lot, don't all shoppers look around?
> A: Yes, but it's more of a nervous look, almost a look over your shoulder, a look around almost constantly.

McDonald testified further about his training and experience, and even conceded that he has investigated many possible shoplifting incidents that turned out to be unfounded. The state then asked McDonald, "[o]kay, back to this particular date, November 20th,

---

[3] *Noble,* supra at 312.

[4] (Footnote omitted.) Id.

[5] See, e.g., *Fitzpatrick v. State,* 271 Ga. App. 804 (611 SE2d 95) (2005) (evidence was not circumstantial, but consisted of direct testimony of loss prevention officer who witnessed theft of DVD player).

2004, you identified the defendant. Did you see the defendant behaving in any of the ways that you had been trained to identify as possible clues for shoplifting?'' The trial court overruled Walton's objection to this question and instructed the jury that certain evidence is admissible to explain why a person acted in a specific way, i.e., why McDonald began to follow Walton around the store. The state then continued as follows:

> Q: Mr. McDonald, you identified that you noticed something?
>
> A: Yes.
>
> Q: What is it that you saw Mr. Walton specifically doing? Not any other person; Mr. Walton?
>
> A: Basically, the most common one that I can think of is looking around, looking over his shoulder, looking for cameras. . . . He's, like I said earlier, looking around suspiciously.
>
> Q: What did you see specifically, if you can recall, Mr. Walton doing, at that point?
>
> A: At this point, after I had started watching, observing Mr. Walton, he selected the item that's in question right now.
>
> Q: Do you recall whether or not he spent any time looking?
>
> A: Another thing that we talked about before, quick selections, and Mr. Walton made a quick, very quick selection on this item.

McDonald then testified that Walton walked into the domestic department, and that

> [s]hoplifters feel more comfortable in dark areas. Because its domestics, comforter sets and whatnot, they stack very high, higher than normal honestly, and this blocks light and also provides a small bit of cover. Shoplifters are more prone to go to these areas because, like I said, they feel more comfortable, less traffic that goes through there.

As a general rule, witnesses are not permitted to express their opinions regarding an ultimate issue in a case, because to do so would invade the factfinding province of the jury.[6] However, ''[e]xpert opinion testimony on even the ultimate issue is admissible where the conclusion of the expert is one beyond the ken of the

---

[6] See OCGA § 24-9-65; *Pittman v. State*, 274 Ga. 260, 262 (2) (553 SE2d 616) (2001), citing *Medlock v. State*, 263 Ga. 246, 248 (3) (430 SE2d 754) (1993).

average layman.'"[7] Even though McDonald was never tendered as an expert witness, the prosecutor laid the foundation for his testimony by questioning him extensively about his experience and training in loss prevention, particularly recognizing the behavior of possible shoplifters. Thus, the jury was able to infer his expertise on the subject.[8] Notwithstanding, McDonald did not state an opinion as to the ultimate issue, that Walton shoplifted the bottle of spray bandage. Instead, McDonald offered an opinion as to the existence of certain typical patterns of behavior exhibited by shoplifters, and then described the behaviors he observed while following Walton around the store.[9] Even though McDonald was a witness to the crime, he did not provide an opinion as to whether Walton was a shoplifter. Accordingly, this enumeration is without merit.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED MAY 30, 2008.

*Robert C. Watts, Michael R. McCarthy, Benjamin D. Goldberg,* for appellant.

*Kermit N. McManus, District Attorney, John S. Helton, Assistant District Attorney,* for appellee.

---

[7] (Citation and punctuation omitted.) *Jenkins v. State,* 240 Ga. App. 102, 104 (2) (522 SE2d 678) (1999).

[8] See *Burse v. State,* 232 Ga. App. 729, 730 (1) (503 SE2d 638) (1998); *Morgan v. State,* 230 Ga. App. 608, 609 (1) (496 SE2d 924) (1998). See also *Morrow v. State,* 230 Ga. App. 137, 140 (3) (495 SE2d 609) (1998) (failure to tender witness as expert is not fatal where qualifications are set out in record and defendant is afforded opportunity to challenge witness's credentials and conduct cross-examination), citing *Bacon v. State,* 225 Ga. App. 326, 328-329 (483 SE2d 894) (1997).

[9] See, e.g., *Edmonson v. State,* 212 Ga. App. 449, 450-451 (1) (442 SE2d 300) (1994) (testimony of expert as to pattern of behavior commonly shown by rape victims and behavior observed in victim did not amount to expert opinion as to whether victim had been raped), overruled in part on other grounds, *Curtis v. State,* 275 Ga. 576, 578 (1) (571 SE2d 376) (2002).