### 70164. HIGHTOWER et al. v. GENERAL MOTORS CORPORATION et al.
(332 SE2d 336)

DEEN, Presiding Judge.

On October 15, 1981, the appellants, Steve and Linda Hightower, purchased a 1981 Chevrolet Corvette from Leiphart Chevrolet. On December 10, 1981, while Steve Hightower was driving the vehicle, the rear axle became dislodged and pierced the fiberglass rear compartment. The vehicle, of course, was rendered inoperable. Pursuant to the Chevrolet new car warranty, the Hightowers took the vehicle to the nearest Chevrolet dealer, the appellee Martin Burks Chevrolet in Clayton County.

Repair of the vehicle took longer than anticipated because of delays in receiving parts that had to be ordered. On January 21, 1982, it appears that Martin Burks informed the appellants that, except for installation of carpet in the rear compartment, repairs were completed and they could use the vehicle until the carpet arrived. It is unclear exactly when the appellants picked up the vehicle, but on February 4, 1982, another repair order was written up by Martin Burks for several problems (including inoperative power radio antenna and burglar alarm) unrelated to the axle repair. (The appellants claimed that they returned the car the same day that they had picked it up after the axle repair.) Martin Burks made these additional repairs under the warranty, but the appellants declined to accept the vehicle until the carpet was installed. Martin Burks, unable to obtain the right carpet from its regular sources, eventually resorted to an independent supplier, and on or about April 5, 1982, the carpet was installed. The appellants were charged for none of the above repairs. During the entire period of time that the vehicle was being repaired, the appellants had use of at least one other vehicle owned by them and the use of a car owned by Linda Hightower's parents.

Subsequently, the Hightowers commenced this action against Martin Burks Chevrolet, Inc., and General Motors Corporation, seeking damages of $1,920 for the depreciation of the vehicle, $13,000 for the loss of use of the car, and $5,000 for the loss of warranty time and bad faith of the defendants. Shortly before the case went to trial, the appellants sold the vehicle for what they considered to be its fair market value. Following the close of the appellants' evidence, the trial court directed verdicts for both defendants on the claim for the loss of use of the vehicle and on the claim for bad faith damages; the jury returned a verdict for the defendants on the depreciation claim. Judgment for the defendants was entered on October 5, 1984, and this direct appeal followed. *Held*:

1. On May 8, 1983, less than 3 months after the complaint was filed in this case, two men hired by Steve Hightower "stole" and burned another car owned by Hightower, and Hightower was indicted for this act. He subsequently pleaded guilty to third-degree arson and was sentenced to two years' probation and a $350 fine under the provisions of the First Offender Act (OCGA § 42-8-60 et seq.). At trial, the appellees were allowed to produce this first offender record to impeach Hightower, and the appellants contend that this was error. We reject that contention.

Notwithstanding the fact that under the First Offender Act a conviction does not result unless the person sentenced fails to complete satisfactorily the probationary period, the record of a first offender sentence may be used to impeach a witness in a criminal case. *Favors v. State*, 234 Ga. 80 (214 SE2d 645) (1975) (state's witness); *Moon v. State*, 154 Ga. App. 312 (268 SE2d 366) (1980) (defendant's witness). See also *Miller v. State*, 162 Ga. App. 730 (292 SE2d 102) (1982). If such evidence may be used against a criminal defendant's witness, where the defendant's liberty is in jeopardy, this court is under even less compulsion to exclude it in a civil action.

The dissent argues that *Moon v. State*, supra, does not stand for the proposition that the state may impeach a defense witness with the witness's first offender record, because the decision does not specify whether the witness was for the state or for the defense. Such specificity may be desirable, but it certainly was not necessary in *Moon*. In *Moon* the defendant appealed from his criminal conviction and contended that the trial court erred in allowing a witness to be impeached by a first offender record. Certainly the defendant neither would nor could complain of his own impeachment of a state's witness. The obvious and indubitably only possible situation presented in *Moon* was that the defendant was appealing from the state's impeachment of a defense witness.

From *Favors* and *Moon*, it logically follows that a first offender record may be used to impeach a witness in a civil case. To hold oth-

erwise would honor pecuniary interest over liberty interest.

2. The appellants also contend that the trial court erred in directing a verdict for the appellees on the claims for loss of use of the vehicle and for bad faith damages. We disagree.

In this case, the warranty extended by General Motors Corporation limited the buyer's remedy to return of the goods and repayment of the price, or to repair and replacement of any non-conforming goods; the warranty further specifically excluded any damage for loss of use of the vehicle while repairs were made. OCGA § 11-2-719 generally allows such limitations of remedies unless the limitations are unconscionable. *Frick Forest Prods. v. Intl. Hardwoods*, 161 Ga. App. 359 (288 SE2d 625) (1982); *Jacobs v. Metro Chrysler-Plymouth*, 125 Ga. App. 462 (188 SE2d 250) (1972). A breach of such a limited warranty results from the refusal to remedy within a reasonable time or a lack of success in the attempts to remedy, and the usual measure of damages is the "difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." OCGA § 11-2-714 (2). See *Teledyne Indus. v. Patron Aviation*, 161 Ga. App. 596 (288 SE2d 911) (1982).

It was undisputed in this case that the defendants neither refused nor failed to repair the appellants' vehicle. The breach of the new car warranty thus occurred, if at all, in the failure to complete the repairs in a reasonable time. Even accepting the evidence most favorable to the defendants, most of the repair of the rear axle required over 5 weeks to complete; at worst, the appellees took approximately 115 days to complete the repairs (albeit that several unrelated repairs were also made during the interim). We find this circumstance to preclude holding as a matter of law in this case that the repairs were made within a reasonable time. Such questions of reasonableness usually remain most appropriate for the jury. *Hub Motor Co. v. Zurawski*, 157 Ga. App. 850 (278 SE2d 689) (1981).

OCGA § 11-2-719 (2) provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title." Regardless of whether this case is considered in terms of the lengthy delay in repairing the appellants' vehicle constituting a breach of the limited warranty to repair or replace, or as a defeat of the essential purpose of that limited warranty, the only real damage possible obviously was loss of use of the vehicle, which also was specifically excluded by the new car warranty. Compare *Teledyne Indus. v. Patron Aviation*, supra. The breach or defeat of a limited warranty to repair or replace, of course, does not simultaneously invalidate other limitations of damages contained in the new car warranty, but the other limitations must still be conscionable. In

the situation presented by this case, where the only identifiable damage was the loss of use of the vehicle, enforcement of this additional limitation would in effect deprive consumers in the position of the plaintiff here of any remedy.

Unfortunately for the appellants, however, there was no proof of damages in this regard. The appellants claimed $13,000 in loss of use damages, based upon the daily rental rate of similar automobiles in Las Vegas, Nevada; this evidence of Las Vegas rental rates was properly excluded as irrelevant. Further, while the repairs were made, the appellants had free use of the spare car of Linda Hightower's parents. Even assuming that the delay in completing the repair on the vehicle was unreasonable, the appellants simply failed to prove the requisite element of damage, and directed verdict for the defendant was proper.

The trial court also properly directed a verdict for the appellees on the appellants' claim for bad faith damages. The only possible damages for bad faith in this case would be for expenses of litigation under OCGA § 13-6-11. Such bad faith damages are not recoverable where there exists a bona fide controversy. *Jeff Goolsby Homes Corp. v. Smith*, 168 Ga. App. 218 (308 SE2d 564) (1983). Defense of the appellants' claim for depreciation of the vehicle during the lengthy time before repairs were completed certainly would not support an award for litigation expenses since the defendants prevailed by jury verdict on that claim. Concerning the appellants other legitimate claim, i.e., for loss of use of the vehicle, there obviously was a bona fide controversy both over liability, since the limited warranty expressly excluded that type of damage, and over the amount of damages. See *Georgia-Car. Brick &c. Co. v. Brown*, 153 Ga. App. 747 (266 SE2d 531) (1980).

*Judgment affirmed. Banke, C. J., McMurray, P. J., Birdsong, P. J., and Sognier, J., concur. Beasley, J., concurs in the judgment only. Carley, Pope, and Benham, JJ., dissent.*

Pope, Judge, dissenting.

I respectfully dissent to Division 1 of the majority opinion. In their first enumeration appellants assign error to the trial court's denial of their motion in limine which sought to exclude from evidence the criminal record of appellant Steve R. Hightower. As noted by the majority, Hightower pled guilty to third-degree arson; he received a period of probation and a fine as a first offender pursuant to what is commonly known as the First Offender Act (hereinafter, the Act), OCGA § 42-8-60 et seq. Appellants argue that first offender status, in which there has been no adjudication of guilt, cannot be utilized to impeach the trustworthiness of a witness in a civil proceeding.

The First Offender Act provides that "[u]pon a verdict or plea of

guilty or a plea of nolo contendere, but before an adjudication of guilt, in the case of a defendant who has not been previously convicted of a felony, the court may, without entering a judgment of guilt and with the consent of the defendant: (1) Defer further proceeding and place the defendant on probation. . . ." OCGA § 42-8-60 (a) (1). "Upon fulfillment of the terms of probation, upon release by the court prior to the termination of the period thereof, or upon release from confinement, the defendant shall be discharged without court adjudication of guilt. The discharge shall completely exonerate the defendant of any criminal purpose and shall not affect any of his civil rights or liberties; and the defendant shall not be considered to have a criminal conviction." OCGA § 42-8-62. Access to a first offender record is strictly limited to those officials in a position to use it "in any subsequent prosecution of the defendant for any other offense. . . ." OCGA § 42-8-65 (a); 1981 Op. Att'y Gen. U81-32.

Generally, a witness is subject to impeachment by proof of a conviction of a felony or a crime involving moral turpitude. *Henderson v. State*, 146 Ga. App. 114 (3) (245 SE2d 437) (1978). However, "[i]t is obvious that the General Assembly intended the first offender probation to have a different effect than probation in other cases. Any probationary sentence entered under this Act is preliminary only, and, if completed without violation, permits the offender complete rehabilitation without the stigma of a felony conviction." *State v. Wiley*, 233 Ga. 316, 317 (210 SE2d 790) (1974). Notwithstanding the broad protection afforded a first offender under the Act, the Supreme Court has carved out a limited exception thereto. In *Favors v. State*, 234 Ga. 80 (3) (214 SE2d 645) (1975), the court held that a criminal defendant may utilize the first offender record of a State's witness for the purpose of impeachment. "Considering the merits of this question, where the testimony of a witness is sought to be impeached by conviction of a crime, the assumption is that such person may be untrustworthy as a witness and that the jury should be informed of this possible lack of trustworthiness in reaching their verdict . . . In balancing the rights of a first offender to be protected against having the stigma of a criminal record as opposed to the rights of a defendant in a criminal case to impeach the testimony of the witnesses against him, the latter prevails." Id. at 87; *Gilstrap v. State*, 250 Ga. 814 (2) (301 SE2d 277) (1983). See also *State of Ga. v. C. S. B.*, 250 Ga. 261, 263 n. 2 (297 SE2d 260) (1982). The majority, citing *Moon v. State*, 154 Ga. App. 312 (1) (268 SE2d 366) (1980), argues that this court has further eroded a first offender's rights under the Act by extending the rule in *Favors* to allow the State in a criminal case to introduce evidence of a defense witness' first offender status for the purpose of impeachment. However, the conclusory language of the opinion in *Moon* affords no basis for so holding. In the absence of such a basis or any explanation

for the holding, I find the opinion in *Moon* to be entirely unpersuasive as authority for the proposition that the State may impeach a defense witness by use of the witness' first offender status. See also *Miller v. State*, 162 Ga. App. 730, 733 (292 SE2d 102) (1982), and *Ware v. State*, 152 Ga. App. 199, 200 (262 SE2d 536) (1979), wherein this court's unnecessarily overbroad language implying an unrestricted use of first offender status for impeachment is mere obiter dicta. There is, thus, no substantial authority for extension of the rule in *Favors* beyond the limited circumstances of that case, even in the criminal arena. In light of the following discussion, I would overrule the holding in *Moon*, and expressly disapprove the cited obiter in *Miller* and *Ware*.

Clearly, the Supreme Court in *Favors* found the circumstance of a defendant in a criminal case, who faces the possible loss of his liberty, to be more compelling than the circumstance of a witness/first offender against him, who faces only the stigma of a criminal record. In a civil case such as the case at bar, there is no comparable justification, in my view, for further eroding the rights of a first offender under the Act. Under Georgia law as it now stands, a record of conviction may be used to impeach a witness no matter how much time has elapsed since the conviction. *Giles v. Jones*, 169 Ga. App. 882 (315 SE2d 440) (1984). This has been the rule in this state for over 100 years. See *Georgia R. v. Homer*, 73 Ga. 251 (5) (1885). Since its enactment by the General Assembly in 1968 the First Offender Act has expressly provided that "[u]pon fulfillment of the terms of probation . . . the defendant *shall not* be considered to have a criminal conviction." (Emphasis supplied.) OCGA § 42-8-62; see Ga. L. 1968, pp. 324, 325. "When the law is clear and explicit and its provisions are susceptible of but one interpretation, its consequences, if evil, can only be avoided by a change of the law itself, to be effected by legislative and not by judicial action. [Cit.] It is an elementary rule of construction that when a statute is clear and unambiguous, it will be held to mean what has been clearly expressed." *Barnes v. Carter*, 120 Ga. 895, 898 (48 SE 387) (1904); *Rayle Elec. Membership Corp. v. Cook*, 195 Ga. 734 (2) (25 SE2d 574) (1943). "And it is well settled in this jurisdiction that all statutes are presumed to be enacted by the legislature with full knowledge of the existing condition of the law and with reference to it. . . ." *Spence v. Rowell*, 213 Ga. 145, 150 (97 SE2d 350) (1957). Applying these rules to the First Offender Act, it is unmistakably clear that the General Assembly intended to exclude the use of a first offender record for the purpose of impeachment, for there generally can be no impeachment without a record of conviction. See *Durrett v. State*, 135 Ga. App. 749 (3) (219 SE2d 9) (1975); but see *Favors v. State*, supra.

To allow the unrestricted use of a first offender record for the

purpose of impeachment, particularly in civil cases, would be directly contrary to the express mandate of the Act and would impose by judicial fiat a limitation, in addition to the one expressly provided by the General Assembly, on the right of a first offender to be free from the stigma of a criminal record. I am persuaded that the General Assembly intended the Act to ameliorate the harsh consequences of a criminal conviction for those who have not previously committed a crime. That is, the Act provides a first offender with a "second chance" in life by providing him the opportunity to rehabilitate himself and thus earn "forgiveness," if you will, for his crime. It follows that an individual in the process of serving a period of probation under the Act, such as appellant Steve Hightower in this case, should be treated in the same manner as an individual who has satisfactorily fulfilled the terms of his probation. See, e.g., 1981 Op. Att'y Gen. U81-12. Therefore, I believe the trial court erred in denying appellants' motion in limine and in admitting Hightower's first offender record into evidence for the purpose of impeaching his credibility. Since much of appellants' case rested upon the testimony of appellant Steve Hightower, I do not view the error as harmless. See *Gilstrap v. State*, supra. Accordingly, the judgment of the trial court should be reversed and the case remanded for a new trial.

I am authorized to state that Judge Carley and Judge Benham join in this dissent.

DECIDED MAY 31, 1985 —
REHEARING DENIED JUNE 12, 1985 —

*Lewis N. Jones*, for appellants.
*Byron Attridge, Chilton D. Varner, J. Comer Yates, Edward D. Buckley III, Daniel A. Angelo*, for appellees.