75842. STEPHENS v. CRITTENDEN TRACTOR COMPANY.
(370 SE2d 757)

SOGNIER, Judge.

Crittenden Tractor Company brought suit on open account against John Stephens for sums due under a contract for purchase of a used combine and other equipment. Stephens answered and counterclaimed against Crittenden for breach of warranties of fitness for a particular purpose and merchantability, alleging that the equipment he purchased from Crittenden failed to operate properly or was not repaired adequately and that he had sustained damages as a result thereof. At the close of evidence, the trial court directed the jury to

return a verdict in favor of Crittenden on its main claim and against Stephens on his counterclaim. Stephens appeals.

Evidence adduced at trial revealed that appellant accepted a price quotation from appellee to purchase a used Allis-Chalmers combine along with both a used corn head and a used floating grain head for the combine. The price quotation was contained in a document filled in by appellee's agent that set forth both the price and the terms of the "used equipment warranty" on the equipment, namely, a 20% discount on all repair parts until the end of the 1985 soybean harvest and free labor on major failures such as engine and transmission. The parties subsequently signed an equipment purchase contract for the used equipment which contained, in boldface print, appellant's agreement that he had read the warranty and conditions in the document and that he understood his copy of the document "to be the entire agreement relating to the sale and warranty of the above described machinery. The warranty does not apply to used machinery included in this order whether or not designated as such." While most of the equipment purchase contract consisted of terms applicable only to the "Company," i.e., Allis-Chalmers, a party not involved in the sale of the used equipment, the document did contain one provision, in Paragraph G, which specifically addressed appellee, as "Dealer." Paragraph G provided: "NO DEALER WARRANTY The selling Dealer makes no warranty of his own on any equipment warranted by Company, and *makes no warranty on other items unless he delivers to purchaser a separate written warranty specifically warranting the item.* The Dealer has no authority to make any representation or promise on behalf of Company or to modify the terms or limitations of this Warranty in any way." (Emphasis supplied.) Within a day or two after appellant took the combine and the corn head to his farm he began to experience numerous problems with the equipment which hampered his attempt to harvest his corn crop. Appellee was called upon repeatedly to service the equipment. The corn crop was eventually harvested with a combine provided free of charge as a test model by its manufacturer. However, when appellant subsequently sought to use the combine with the floating grain head to harvest his soybean crop, appellant was unable to use the grain head because mechanical difficulties prevented the grain head from properly "floating" so as to conform to the contours of the land and thereby to collect the soybean crop. Appellant borrowed a neighbor's grain head to harvest the soybeans. The evidence was in sharp conflict over repairs to the grain head in that appellee asserted the grain head was repaired while appellant denied the head was ever operable. Appellant further testified that the combine itself developed such severe problems it could no longer safely be operated. At trial the evidence was uncontroverted that appellee never charged appellant any sums for any of the labor

expended to service the used equipment and appellee gave appellant a 20 percent discount for repair parts not associated with normal wear and tear on the used equipment.

1. Appellant contends the trial court erred by directing a verdict in favor of appellee on his counterclaims for appellee's breach of express and implied warranties. We note that appellant, through counsel, expressly waived any claims based on implied warranties during trial, a position consistent with the parties' pre-trial order. Thus, we address only appellant's arguments that appellee (a) breached the express warranty to repair by failing to repair the equipment in a timely fashion and (b) breached an express warranty to deliver the equipment in good condition pursuant to the provisions of OCGA § 11-2-313.

(a) We agree with appellant that there was evidence to support a finding that the "used equipment warranty" in the purchase order, providing that appellee would provide free labor on major failures, constituted a "separate written warranty" under Paragraph G of the equipment purchase contract not otherwise subject to the disclaimer of warranty contained therein. We further agree with appellant that the express warranty to provide free labor was an express warranty to repair, or at least service, the purchased equipment. In the absence of any language specifying the time for making such repairs, the warranty was thus subject to the provision of OCGA § 11-2-309 (1) imposing a "reasonable time" requirement on action taken pursuant to this warranty. Reviewing the evidence presented at trial, it is apparent that the timeliness of appellee's repairs of the used equipment was a hotly contested issue, with both parties presenting conflicting evidence as to the number of times the equipment was serviced, the efficacy of the servicing, and the timeliness of the repairs in view of the status of the crops to be harvested.

"A jury issue is . . . presented regarding a reasonable time allowed a seller to comply with the warranty provision of a sales contract. [Cit.]" *Hub Motor Co. v. Zurawski*, 157 Ga. App. 850, 851 (1) (278 SE2d 689) (1981). See also *Hightower v. Gen. Motors Corp.*, 175 Ga. App. 112, 114 (2) (332 SE2d 336) (1985). "Where there is 'some evidence,' or 'any evidence' supporting the respondent's assertions, disputed issues are created which are for jury resolution. [Cit.]" *Grabowski v. Radiology Assoc.*, 181 Ga. App. 298, 301 (3) (352 SE2d 185) (1986). Thus, we reverse the trial court's grant of a directed verdict to appellee on appellant's counterclaim insofar as the alleged breach of warranty to repair timely the purchased equipment is involved.

(b) Appellant also alleges there is a question of fact whether appellee breached an express warranty appellant contends existed pursuant to OCGA § 11-2-313. OCGA § 11-2-313 (1) provides: "Express warranties by the seller are created as follows: (a) Any affirmation of

fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Appellant argues that oral representations made to him by one of appellee's employees and its president that the used equipment would be sold in "working" condition constituted an express warranty under OCGA § 11-2-313. Appellant argues that parol evidence in the form of trial testimony by appellee's president and the employee in agreement with appellant's contention that the equipment would be sold to appellant in "working" condition established conclusively the existence of this warranty. However, under the clear and unambiguous language in Paragraph G of the equipment purchase contract signed by appellant, no warranty could be made by the dealer, i.e., appellee, on the used equipment in the absence of a separate written warranty specifically warranting the item. The contract also explicitly provided that appellee could not modify the terms or limitations of the warranty document. Thus, appellant was on notice that appellee could offer a warranty on the used equipment only to the extent such warranty was contained in a separate *written* warranty and in the absence of any ambiguity, parol evidence was not admissible to add to, take from, or vary the terms of the written contract. See *Rigg v. New World Pictures*, 183 Ga. App. 446, 448 (2) (359 SE2d 207) (1987). The parol evidence from appellee's president and employee, though admitted without objection, was nevertheless without probative value to vary the terms of the written contract. *Cooper v. Vaughn*, 81 Ga. App. 330, 337-338 (58 SE2d 453) (1950); *Waters v. Lanier*, 116 Ga. App. 471, 474-475 (157 SE2d 796) (1967). Evidence at trial established that the only document that could be construed as a separate written warranty under Paragraph G was the "used equipment warranty" in the purchase order which contained no warranty that the equipment would work, but only provided that the equipment would be repaired with free labor and with discounted repair parts.

Notwithstanding the language in Paragraph G of the equipment purchase contract, appellant argues the express warranty that the used equipment be in "working" condition that he claims was created by oral representations here could not be negated by the disclaimer in the contract, citing *Century Dodge v. Mobley*, 155 Ga. App. 712 (2) (272 SE2d 502) (1980) and *Hill Aircraft v. Simon*, 122 Ga. App. 524, 526 (2) (177 SE2d 803) (1970). In both those cases, an express warranty was contained in the contract in the form of a description of the purchase: in *Century Dodge*, supra, a vehicle previously involved in an accident was described in the contract as "new"; in *Hill Aircraft*,

supra, an aircraft described as "flyable" failed to meet that requirement. The rationale for allowing a purchaser to pursue a remedy for breach of express warranty despite limitation language in the contract was clarified in *Century Dodge* on the basis that because "the car purchased *was described as new in the contract*," under OCGA § 11-2-313 (former Code Ann. § 109A-2—313) it would be "unreasonable to allow an express warranty *contained in a contract* (the description as 'new') to be negated by a disclaimer of warranty in the same contract, for the two provisions are not consistent with each other." (Emphasis supplied.) Id. at 713. Cases in which recovery for breach of contract based on an express warranty was barred when the purchaser had acknowledged a disclaimer of all warranties by signing the contract were carefully distinguished. Id. Since in the case sub judice the express warranty that the equipment be in "working" condition asserted by appellant was not contained in the contract, or otherwise referenced in a separate written document, the rationale of *Century Dodge* is not applicable and the disclaimer of warranty in Paragraph G of the equipment purchase contract barred any claim based thereon.

However, while the trial court properly directed the verdict in favor of appellee insofar as the express warranty that the equipment be in "working" condition is concerned, we note that while there was no evidence adduced at trial that appellant did not receive the precise combine and corn head he purchased, as to the grain head the purchase order reflected that appellant was purchasing a used thirteen foot "floating" grain head, serial number 61505. The equipment purchase contract indicates the purchase of a thirteen foot grain head, serial number 61305, with no indication whether the grain head was a "floating" head or not. Although there was no contention at trial that appellant did not receive the same used grain head he contracted to purchase (the difference in serial numbers notwithstanding), the evidence at trial conflicted whether the head appellant received was a floating head that was broken, was a floating head that was operational but which appellant mistakenly believed would contour itself to the shape of the field in a manner different from its capabilities, or whether the head was not a floating head at all but a fixed head. Thus, it is apparent a question of fact exists whether appellee breached its express warranty to provide appellant with a "floating" grain head, the description "floating" having been made part of the contract. See *Century Dodge*, supra. " 'A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced together with all reasonable deductions or inferences therefrom demands a particular verdict. [Cits.]' [Cit.]" *Dependable &c. Co. v. Nursecare of Atlanta*, 184 Ga. App. 136, 137 (1) (361 SE2d 23) (1987). The trial court erred by

granting a directed verdict in favor of appellee on this issue.

2. Appellee argues that the directed verdict is nonetheless correct under Paragraph I of the equipment purchase contract providing: "REMEDIES EXCLUSIVE The Company's liability, whether in contract or in tort, arising out of warranties, representations, instructions, or defects from any cause shall be limited exclusively to repairing or replacing parts under the conditions as aforesaid, and in no event will the Company be liable for consequential damages, including but not limited to loss of crops, loss of profits, rental or substitute equipment, or other commercial loss." However, the equipment purchase contract contains no language comparably limiting the liability of appellee, whose status in the contract is that of "Dealer," not "Company." Thus, we do not agree with appellee that this paragraph applies to appellee so as to limit any damages appellant might prove as a result of appellee's alleged breach of the express warranties discussed in Division 1, supra.

3. Appellant contends the trial court erred by ruling that appellant was not entitled to "rescind" or revoke his acceptance of the purchased equipment based on its nonconformity. OCGA § 11-2-608, entitled "Revocation of acceptance in whole or in part," provides: "(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it: (a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or (b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances."

In *Jacobs v. Metro Chrysler-Plymouth*, 125 Ga. App. 462 (188 SE2d 250) (1972), the purchaser of an automobile subject only to a warranty to repair or replace defective parts sought to revoke his acceptance of the vehicle when the seller breached its warranty by a refusal to repair. This court upheld the denial of a motion for directed verdict made by the seller on the basis that a refusal to repair or an unsuccessful repair was such a breach as to render revocation of acceptance of the vehicle an available remedy under OCGA § 11-2-608 (former Code Ann. § 109A-2—608). Id. at 467 (1). While we agree with appellee that "although [the purchased equipment] may have been in poor operating condition and in need of extensive repairs, those factors did not place [the equipment] in nonconformance with the contract," *Bicknell v. B & S Enterprises*, 160 Ga. App. 307, 309 (287 SE2d 310) (1981), we do not agree with appellee that *Bicknell* is applicable here because this is not a case where the purchaser seeks to revoke acceptance of a purchase due to discoverable nonconformities existing at the time of purchase. Rather, appellant seeks to use OCGA § 11-2-608 to revoke his acceptance of the equipment because

appellee breached its warranty to provide timely repair of the used equipment, and is thus proceeding under the authority of *Jacobs*, supra, and OCGA § 11-2-106 (2), which provides: "Goods or conduct including any part of a performance are 'conforming' or conform to the contract when they are in accordance with the obligations under the contract." Thus, appellant seeks a remedy cognizable under Georgia law, that of revoking his acceptance of goods due to the nonconformity of appellee's performance of obligations under the contract. See generally *Esquire Mobile Homes v. Arrendale*, 182 Ga. App. 528-529 (1) (356 SE2d 250) (1987).

Since the remedy appellant seeks is legally available and in view of the existence of questions of fact whether appellee breached its warranty to repair appellant's equipment and whether revocation was made within a reasonable time, see OCGA § 11-2-608 (2), the trial court erred by granting appellee's motion for directed verdict on this issue. See generally *Grabowski*, supra; *Griffith v. Nance*, 175 Ga. App. 59, 60 (1) (332 SE2d 358) (1985).

*Judgment affirmed in part and reversed in part. Deen, P. J., and Carley, J., concur.*

DECIDED MAY 24, 1988 —
REHEARING DENIED JUNE 15, 1988.

*Richard A. Childs*, for appellant.
*Jesse G. Bowles III*, for appellee.