**Edward HINES, Plaintiff**

v.

**MERCEDES–BENZ USA, LLC, Defendant**

**No. CIV.A.1:04–CV–43–ODE.**

United States District Court, N.D. Georgia, Atlanta Division.

Jan. 5, 2005.

---

Erie Scott Fortas, Shireen Hormozdi, Amy M. Budow, Krohn & Moss, Atlanta, GA, for Plaintiff.

Jonathan R. Friedman, McKenna Long & Aldridge, Atlanta, GA, for Defendants.

## *ORDER*

EVANS, District Judge.

This breach of warranty action pursuant to Georgia state law and the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, is presently before the Court on Defendant's Motion for Summary Judgment [# 26]; Defendant's Motion to Strike Portions of Plaintiff's Affidavit Related to Vehicle Valuation [# 35]; Defendant's Motion to Strike, or in the alternative, Exclude the Expert Witness Testimony of Pat Rossiter [# 38]; and Plaintiff's Motion for Leave to File Surresponse in Opposition to Defendant's Motion to Strike Portions of Plaintiff's Affidavit Related to Vehicle Valuation [# 41].

I. *Summary Judgment Standard*

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any materi-

al fact and that the [Defendant] is entitled to a judgment as a matter of law". Fed. R.Civ.P. 56(c). In ruling on Defendant's motion, the Court must view the evidence in light most favorable to Plaintiffs. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). To prevail in its motion for summary judgment, Defendant must show that the evidence is insufficient to establish an essential element of Plaintiff's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If Defendant makes a sufficient showing, then Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). If the evidence supporting Plaintiff's claims is insufficient for a jury to return a verdict for Plaintiff, or is "merely colorable" or "not significantly probative," then Defendant is entitled to summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If, however, reasonable minds could differ as to the import of the evidence, and a reasonable interpretation of the evidence could lead to a verdict for Plaintiff, then summary judgment is inappropriate. *Id.* at 251–52, 106 S.Ct. 2505.

## II. *Facts*

The following facts are undisputed. On April 30, 2003, Plaintiff Edward Hines ("Hines") purchased a new 2003 Mercedes Benz CL 600C ("vehicle") from one of Defendant Mercedes–Benz USA LLC's ("MBUSA") authorized dealers, RBM of Atlanta ("RBM"), for $136,465.00. The vehicle was sold with the following limited warranty:

DEFECTS: Mercedes–Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a new Mercedes–Benz passenger car that any authorized Mercedes–Benz Center will make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period.

ANY MERCEDES–BENZ CENTER: Any authorized Mercedes–Benz Center of the owner's choice will perform warranty repairs or replacements. The vehicle should be delivered to the Mercedes–Benz Center during normal service hours. A reasonable time should be allowed after taking the car to the Mercedes–Benz Center for performance of the repair.

WARRANTY PERIOD: This warranty is for the first to occur of 48 months or 50,000 miles, from the vehicle's date of delivery or when placed into service if earlier.

Def.'s Ex. D at 13. The warranty also included the following language limiting Defendant's liability:

DIAMLER–CHRYSLER AG, MERCEDES–BENZ USA, LLC, MERCEDES–BENZ CORPORATION OR THE MERCEDES–BENZ CENTER NEITHER ASSUME NOR AUTHORIZE ANY PERSON TO ASSUME FOR THEM ANY OTHER LIABILITY IN CONNECTION WITH SUCH PASSENGER CAR. NO PAYMENT OR OTHER COMPENSATION WILL BE MADE FOR INDIRECT OR CONSEQUENTIAL DAMAGE OR INJURY TO PERSON OR PROPERTY OR LOSS OF REVENUE WHICH MIGHT BE PAID, INCURRED OR SUSTAINED BY REASON OF THE FAILURE OF ANY PART OR ASSEMBLY WHICH MAY BE REPAIRED OR REPLACED IN ACCORDANCE WITH THE TERMS OF THIS WARRANTY.

Def.'s Ex. D at 14.

With approximately 154 miles on the car, on May 15, 2003, Plaintiff brought the

vehicle to RBM of Atlanta because the alarm system was going off randomly upon use of the remote key. On these occasions, the external lights would start flashing and a silent alarm signal would be sent to the alarm company, provoking a response call to Plaintiff. Furthermore, the driver's seat entry and exit system was not working correctly, and the tire pressure warning light was on for no apparent reason. No repair was performed on the alarm system, but the driver's seat entry system was "turned on," and checks were made on the tire pressure monitoring system.

On May 19, 2003, with approximately 262 miles on the car, Plaintiff returned to RBM of Atlanta because the driver's seat was still not operating properly and the tire pressure warning light was still on. On this visit, RBM replaced a damaged sensor in the tire pressure monitoring system. Although no repair was performed on the seat, RBM assured Plaintiff that the seat would not continue to be a problem.

Plaintiff brought the vehicle to the dealership for a third time on June 24, 2003, with only 731 miles on the car. Among the problems requiring repairs included: (1) driver's seat was still not working properly; (2) alarm system was signaling the alarm company for no reason; (3) car phone did not include certain features; and (4) fuel nozzle did not shut off while refueling on two separate occasions at two different gas stations. According to the repair order, there were multiple problems with the seat—"operation was erratic" and proper functioning "failed intermittently." In addition, the seat back latch assembly was found to have "faulty binding" such that the "seat back would not always lock properly." Both the fuel tank and the alarm were also found to be faulty. RBM of Atlanta performed repairs on all defects found.

Over the next nine months, Plaintiff returned to the authorized dealer repair facility five additional times. On July 12, 2004, Plaintiff could not drive the vehicle because the driver's seat back would not latch. The repair report showed that the pivot shaft for the left side of the seat back lock was binding at times. The defect was repaired accordingly. On September 3, 2003, Plaintiff received notification that the alarm was going off while the vehicle was parked. A faulty "LF SAM" was found to be the cause of the problem and replaced.

Plaintiff encountered further problems with the driver's seat requiring yet another trip to the authorized dealership on December 18, 2003. In addition, Plaintiff complained of problems with the convenience lighting feature, hands-free phone, the cup holder, and the remote trunk opener. Inspection of the driver's seat, convenience lighting feature, and hands-free phone revealed no defects. The dealership, however, replaced the cup holder after confirming its erratic operation. Improper functioning of the trunk release was also confirmed. Though no repairs were made, RBM ordered a replacement remote trunk key for Plaintiff. Plaintiff returned to the dealership on January 6, 2004 complaining again about the remote trunk release function. The dealership determined that, as relayed by Mercedes–Benz engineering, the trunk release operated normally. Finally, on March 29, 2004, complaining yet again about the fuel tank not shutting off during refueling, Plaintiff brought the vehicle back to the dealership for repairs. Unable to duplicate the problem, no repairs were performed.

During this period, as a result of these numerous repairs, Plaintiff states he lost faith in Defendant's ability to repair his vehicle. Plaintiff hired counsel and revoked acceptance of his vehicle via a letter

to Defendant MBUSA on October 28, 2003. Defendant refused to honor the request, and Plaintiff subsequently filed suit claiming "various defects," which included "(a) Locks; (b) Seat; (c) Electrical; (d) Alarm; and (e) Failure to diagnose and repair defects." Complaint, ¶ 10.

With regards to defective "locks," Plaintiff explained in his deposition that this concern relates to having to press the remote key entry two times in order to open the trunk from outside the vehicle. Hines Dep. at 100–101, 123. The "seat" problem, in turn, refers to the easy entry feature on the front driver's seat. Hines Dep. at 49. Plaintiff's alleged "electrical" concerns include the trunk remote entry key and easy entry seat feature, as discussed above. In addition, Plaintiff complains of "electrical" problems with the vehicle's hands-free phone and car alarm.

On July 6, 2004, Plaintiff brought the vehicle to RBM of Atlanta for an expert vehicle inspection. Robert Gerlach, a Technical Specialist for MBUSA, inspected Plaintiffs' vehicle. During the inspection and test drive, Gerlach observed no current defects or problems, including no "locks," "seat," "electrical," or "alarm" defect. Gerlach's Affidavit and expert report confirmed that the vehicle functioned normally, as designed, like any other 2003 CL 600C, and had no problems. Consistent with Gerlach's findings, Plaintiff testified in his deposition that he has not returned to the dealership for repairs on the phone. Hines Dep. at 105–106. Nor could Plaintiff testify that current problems with the alarm exist. Hines Dep. at 84, 88, 89, 93. The only current and existing defects alleged, therefore, relate to the trunk release and the driver seat's easy entry and exit system.

Plaintiff continues to drive the vehicle and pay taxes and insurance on the vehicle. Two weeks before his deposition, Plaintiff drove the vehicle to Nashville and back and experienced no problems.

### III. *Discussion*

Plaintiff has alleged two counts in his Complaint: breach of written warranty and breach of implied warranty. Both claims are asserted under Georgia state law, and the Magnuson–Moss Warranty Act ("MMWA"). For each count, Plaintiff requests damages, including loss of use, lost wages, aggravation and inconvenience damages, other incidental and consequential damages, and attorneys' fees and costs. Plaintiff also requests revocation of acceptance pursuant to O.C.G.A. § 11–2–608 and the MMWA.

### A. *Georgia State Law Claims*

#### 1. *Breach of Express Warranty*

■ "A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty. Accordingly, the 'requirement[s]' imposed by an express warranty claim are not 'imposed under state law,' but rather imposed by the warrantor." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Under the specific terms of the limited warranty at issue in this case, the warranty is not breached unless or until Defendant has refused or failed to repair the vehicle. *See* Ex. D at 13 ("Mercedes–Benz USA, LLC warrants .... that any authorized Mercedes–Benz Center will make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period"). When there is a written warranty that includes repair or replacement of parts, as here, two conditions of the warranty are notice of the defect and a reasonable opportunity to repair the defect before a breach of warranty can exist. O.C.G.A. §§ 11–2–508; 11–2–605; 11–2–

607. These being express provisions and conditions of the warranty, a breach of that warranty would occur only upon Defendant's refusal to remedy—it cannot be liable for breach of the warranty attaching to the vehicle until is has a reasonable opportunity to repair. *De Loach v. Gen. Motors,* 187 Ga.App. 159, 160, 369 S.E.2d 484 (1988); *see also Ford Motor Co. v. Gunn,* 123 Ga.App. 550, 551, 181 S.E.2d 694 (1971).

■ The warranty in this case contemplates that the warrantor shall have an opportunity to remedy defects. Thus, the warranty is not instantly breached if the car is found on delivery or at some time thereafter within the warranty period to have a defective part or operational deficiency. The language of the warranty provides that in such event the manufacturer, through its selling dealer or other appointed agency, will replace or repair (except those items and adjustments expressly excluded), and do what is necessary to bring the vehicle to normal at no cost to the purchaser. Assuming the purchaser has maintained his vehicle in the manner specified, it is the refusal to remedy within a reasonable time, or a lack of success in the attempts to remedy which would constitute a breach of warranty. *See Ford Motor Co. v. Gunn,* 123 Ga.App. at 551, 181 S.E.2d 694. A jury question arises as to a breach of warranty when there is a refusal to repair or an inability to repair. *Mulkey v. Gen. Motors Corp.,* 164 Ga.App. 752, 753, 299 S.E.2d 48 (1982).

Defendant argues that summary judgment is appropriate because Plaintiff has not offered any evidence of a defect. Indeed, the record shows that Defendant has successfully remedied the alleged defects of which Plaintiff complained since he took possession of the vehicle. Robert Gerlach ("Gerlach"), who has been employed by MBUSA for five years and has nearly 30 years of experience in repairing, diagnosing, and maintaining vehicles, personally inspected Plaintiff's vehicle on July 6, 2004. Gerlach reviewed the service history of the vehicle and noted the defects complained of by Plaintiff, including locks, seat, alarm, tire pressure monitoring system, fuel tank, trunk key, convenience lighting, cup holder, and the hands free phone. During the inspection, Gerlach inspected the vehicle for all the complaints alleged and made the following observations:

1. Locks: I neither experienced nor observed any problems with the locks during my test drive or at any other time during my inspection.

2. Seat: I neither experienced nor observed any problems with the driver's side seat function during my test drive or at any other time during my inspection.

3. Electrical: I neither experienced nor observed any electrical-related problems during my test drive or at any other time during my inspection.

4. Alarm: I neither experienced nor observed any problems with the alarm during my test drive or at any other time during my inspection.

5. Tire pressure monitoring system: I neither experienced nor observed any problems with the tire pressure monitoring system during my test drive or at any other time during my inspection.

6. Fuel nozzle: I filled the vehicle with fuel at a nearby gas station. I neither experienced nor observed any problems with the fuel nozzle during my test drive or at any other time during my inspection.

7. Trunk and remote key: I neither experienced nor observed any problems with the operation of the trunk and remote key during my test drive

or at any other time during my inspection.

8. Lighting: I neither experienced nor observed any problems with the convenience lighting during my test drive or at any time during my inspection.

9. Cup holder: I neither experienced nor observed any problems with the second cup holder in the console during my test drive or at any other time during my inspection.

10. Hands free phone: I neither experienced nor observed any problems with the hands free phone during my test drive or at any other time during my inspection.

Def.'s Ex. C. Based on these observations, Gerlach concluded that "[n]either the vehicle's service records or repairs, nor [his] observations of the vehicle, indicate a problem with the vehicle or its components, systems or parts." *Id.*

█ Past repairs aside, Plaintiff's only existing complaints relate to (1) having to press the button on the remote trunk entry key two times in order to open the trunk and (2) the driver's seat does not automatically move as far back as Plaintiff would like when the driver-side door is open. Gerlach and the Mercedes–Benz engineers, however, found that these features work properly and function as designed. In the face of this evidence, Plaintiff is to rely on the allegations contained in the Complaint. *Aldridge v. King's Colonial Ford,* 250 Ga.App. 236, 550 S.E.2d 439 (2001) (finding that plaintiff's affidavit did not create an issue of fact in the face of expert testimony). Plaintiff, therefore, has failed to come forward with any evidence of defects or refusal to repair or lack of success in repairing by Defendant except his own opinion that his vehicle is defective. "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

Instead of offering proof of an existing defect that Defendant either refused or failed to remedy, Plaintiff argues that he has, in fact, offered proof of defects as evidenced by the repair reports. Pla.'s Br. at 9. As previously discussed, the mere existence of a defect does not constitute a breach of the written warranty. By the terms of the warranty, a breach occurs only when Defendant has either refused or failed to correct a defect. Plaintiff has offered no such evidence.

Plaintiff also argues that he need not offer evidence of a current and existing defect, contending only that his vehicle "was not repaired within a reasonable amount of time." Pla.'s Br. at 6. According to Plaintiff, the repair history of the vehicle shows that "it has been subjected to repeated failed repairs," as evidenced by return trips to the repair facility. Pla.'s Br. at 7. The repair records themselves, Plaintiff asserts, create an issue of fact that the subject vehicle was not repaired within a reasonable amount of time.

█ When the purchaser returns the product to the dealer and makes the product available for repair, refusal to repair, unsuccessful repair, or repeated failures of the repair constitute a breach of the express warranty. *De Loach v. Gen. Motors,* 187 Ga.App. at 159, 369 S.E.2d 484. The repair must be made within a reasonable amount of time to avoid being deemed a breach of warranty. *Space Leasing Assoc. v. Atlantic Bldg. Systems,* 144 Ga.App. 320, 325, 241 S.E.2d 438 (1977). The defects, which have been noticed to the dealer, cannot be repaired serially, but must be remedied as soon as reasonably prac-

tical to avoid a breach of the express warranty. *Ford Motor Co. v. Gunn*, 123 Ga. App. at 552, 181 S.E.2d 694. Where the manufacturer or dealer has had several opportunities to repair or replace and where the defect remains, such facts create jury questions whether or not there has been a breach of warranty and whether the opportunity to repair was reasonable under the circumstances. *Stephens v. Crittenden Tractor Co.*, 187 Ga.App. 545, 547, 370 S.E.2d 757 (1988).

The Court also notes that the express terms of Defendant's warranty states that a "reasonable time" should be allowed for the completion of repairs. Because the language of the vehicle's limited warranty controls the inquiry, *see Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) ("A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty"), this Court must examine whether a genuine issue of material fact exists as to the reasonableness of Defendant's repair of defects alleged in the Complaint.

■ Defendant first received notice of the vehicle's allegedly defective locks (remote trunk release) on December 18, 2003. RBM confirmed that two clicks were necessary to open the trunk. No repairs were made, but new remote keys were ordered for Plaintiff. On January 6, 2004, Plaintiff returned to RBM complaining that even with the replacement key two clicks were necessary to open the trunk. Plaintiff was then told that, as determined by Mercedes–Benz engineering, the trunk release was operating as designed. Gerlach also determined that there is no defect with the vehicle's trunk release, and it operates properly.

Plaintiff's second complaint relates to the vehicle's driver seat's easy entry function. According to Plaintiff, "the problem was, and still is, that the easy access to the seat, when you exit the vehicle the wheel is supposed to tip up and the seat is supposed to retract for easy access. The seat does not retract." Hines Dep. at 49. The record shows that Defendant first received notice of the alleged defect on May 15, 2003. No repairs were made on that date, but RBM "turned on" the easy entry function "via instrument cluster." Pla.'s Ex. E. Plaintiff returned to RBM of Atlanta on May 19, 2004 with the same complaint. RBM found no defects and no repairs were performed. On June 24, 2003, Plaintiff brought the vehicle to RBM of Atlanta complaining for the third time about the driver seat's easy entry function. On this occasion, however, RBM confirmed that the operation was "erratic" and "intermittently failing." Pla.'s Ex. G. After conducting lengthy tests, checks, and repairs, RBM "found that operation appeared to be operating properly after repairs." *Id.* RBM also "road tested, and function tested, numerous times, using both smart keys, and found proper operation during all function tests." *Id.* The repair report further advised Plaintiff of proper operation of the easy entry function:

> There are prerequisites and 'maps' within the seat control module ... that determine if the easy entry will be enabled such as, but not limited to, if the smart key is inserted ... with the door open the steering column will move but the seat may not, and if easy entry function is attempted with the seat position behind a predetermined position ... the seat will not move, and seat positions will differ between keys.

*Id.* Plaintiff returned to RBM of Atlanta for a fourth time on December 18, 2003 complaining that the driver seat's easy entry function was inoperable. Finding that "seat operation is correct as designed" and "easy entry feature operated within designed safety limits," RBM performed no repairs. Pla.'s Ex. J. Gerlach's expert in-

vestigation also confirmed that the seat operates as designed.

Defendant first received notice of a defective alarm on May 15, 2003. On the first visit, RBM was "unable to verify/duplicate at [that] time." Pla.'s Ex. E. No repairs were performed. Plaintiff returned to RBM with the same complaint on June 24, 2003. During this second visit, RBM discovered a "faulty alarm horn," which it replaced. Pla.'s Ex. G. Problems with the alarm, however, persisted, and Plaintiff returned to RBM a third time on September 3, 2003. At this time, RBM replaced the "faulty LF SAM." Pla.'s Ex. I. On April 30, 2004, Plaintiff could not testify that a problem with the alarm existed, and Gerlach's inspection also revealed no defects.

Plaintiff's final complaint relates to the "electronic" problem of the hands-free phone. Defendant received notice of an allegedly defective hands-free phone on December 18, 2003. No repairs were performed at that time. Since then, Plaintiff has not returned to RBM and cannot say that a problem currently exists. Gerlach's investigation also revealed no defects.

Though not alleged in the Complaint, Plaintiff also experienced problems with the tire pressure monitoring system, fuel tank, cup holder, seat back, and convenience lighting. With the exception of the tire pressure monitoring system and seat back, both of which were successfully remedied upon second notice, all remaining problems were effectively repaired upon first notice to Defendant.

Although this Court has found no Georgia cases discussing what constitutes a "reasonable" time for the completion of repairs, Georgia courts have held that such questions of reasonableness "usually remain most appropriate for the jury." *Hightower v. GM Corp.*, 175 Ga.App. 112, 114, 332 S.E.2d 336 (1985), overruled on other grounds, *Pender v. Witcher*, 196 Ga.

App. 856, 397 S.E.2d 193 (1990). Having reviewed the service history record, however, this Court finds that there is no genuine issue of material fact that RBM performed all necessary repairs within a reasonable time and that no reasonable jury could find otherwise. RBM successfully completed the necessary repairs with respect to the cup holder and fuel tank on the first attempt. The tire pressure monitor and seat back required two attempts. The most complicated problems—the driver's seat and alarm system—reasonably required three attempts to successfully remedy. Though diagnosis and repair of defects in the first instance is ideal, clearly, such is not required under the terms of the warranty, which only promises that repairs will be corrected within a reasonable time. In determining reasonability of time to perform repairs, this Court also considers the nature of the defects. Though it is indisputable that Plaintiff's vehicle required a number of repairs, only one arguably affected the drivability of the vehicle. When Plaintiff's seat back failed to latch, preventing him from driving the vehicle, RBM of Atlanta attempted to repair the vehicle at Plaintiff's location, and when that failed, promptly and successfully made the necessary repairs at the dealership. Only one defect—the faulty fuel tank—had the potential to be dangerous. As previously noted, RBM successfully repaired the faulty fuel tank on the first attempt. Though the Court does not characterize Plaintiff's remaining complaints as trivial, the Court does note that none of the remaining defects were urgent or dangerous.

The undisputed facts of this case, therefore, are easily distinguishable from those cases where Georgia courts found that the issue of reasonableness presented a jury question. In *Hightower v. GM Corp.*, 175 Ga.App. 112, 332 S.E.2d 336 (1985), the rear axle of plaintiff's car became dis-

lodged rendering the car inoperable. Because the repairs took anywhere between 5 weeks to 115 days (actual time required was in dispute), the Georgia Court of Appeals found this circumstance prevented the holding as a matter of law that the repairs were made within a reasonable time. *Id.* at 114, 332 S.E.2d 336. *McDonald v. Mazda Motors of America, Inc.,* 04 FCDR 2697, 269 Ga.App. 62, 603 S.E.2d 456 (2004), a case which Plaintiff repeatedly cites, is equally inapposite. In that case, Plaintiff's vehicle developed a loud rattling noise under the engine and transmission. After keeping plaintiff's vehicle for three and a half weeks, the dealership returned the vehicle to plaintiff unrepaired. Plaintiff returned to the dealership on two more occasions, and both times, the dealership refused to make the necessary repairs. Seventeen months later, after plaintiff filed suit, the dealership performed the repairs. Based on these facts, the Georgia Court of Appeals held that whether or not seventeen months is a reasonable time to repair is a jury question.

This Court disagrees with Plaintiff that the question of whether repairs were made within a reasonable time always requires a jury determination. Though genuine issues of fact with regard to this question can and do exist, in such a case as this, no reasonable jury could find that Defendant, through RBM of Atlanta, required an unreasonable amount of time to complete the repairs on any of the defects. "[A] court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts that the conclusion upon which the non-movant's claim rests." *Mize v. Jefferson City Bd. Of Educ.,* 93 F.3d 739, 743 (11th Cir.1996).

Finding that MBUSA has neither refused nor failed to repair a defect, and that repairs were completed within a reasonable amount of time as a matter of law, this Court grants summary judgment in favor of Defendant against Plaintiff's breach of express warranty claim.

2. *Breach of Implied Warranty*

■ Under O.C.G.A. § 11–2–314(1), "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." The statute goes on to state that "[g]oods to be merchantable must be at least such as ... [a]re fit for the ordinary purposes for which such goods are used". O.C.G.A. § 11–2–314(2)(c). This warranty only protects consumers from "defects or conditions existing at the time of sale." *Jones v. Marcus,* 217 Ga.App. 372, 457 S.E.2d 271 (1995). For example, in *Patron Aviation, Inc., v. Teledyne Industries, Inc.,* 154 Ga. App. 13, 267 S.E.2d 274 (1980), the evidence adduced at trial showed that the plane would be dangerous to fly in the absence of a complete overhaul because running the engine at excessive temperatures could result in damage to the engine. Because there was evidence to show "that the engine was not fit for the ordinary purposes for which such products are used," *Patron Aviation,* 154 Ga.App. at 15, 267 S.E.2d 274, the court reversed the directed verdict against plaintiff. In another example, *Ford Motor Company v. Hooks,* 143 Ga.App. 823, 240 S.E.2d 205 (1977), the plaintiff purchased a vehicle that produced unusual vibrations when driven which made it undrivable. Because "[t]he evidence was ample to show the truck had no value at its purchase for the purposes intended," the court affirmed the judgment for plaintiff. *Hooks,* 143 Ga. App. at 825, 240 S.E.2d 205.

■ The Court is persuaded by Defendant's argument that there is no evidence to show that the vehicle's drivability or usefulness was ever affected by the alleged

defects. Plaintiff does not allege that the vehicle was ever rendered inoperable, or that its capacity to operate as a means of transportation was ever disabled by defects alleged in the Complaint. Without such evidence, there is no basis for a decision that the vehicle was not merchantable as guaranteed by the implied warranty.

Plaintiff's case is similar to *Horne v. Claude Ray Ford Sales, Inc.*, 162 Ga.App. 329, 330, 290 S.E.2d 497 (1982). In *Horne*, an individual sued for breach of implied warranty after discovering damage and indications of prior repairs on an automobile that he purchased after that vehicle was represented to him as being new. The Court stated that "[t]here was no evidence of any breach of the implied warranties of merchantability ... as the plaintiff admitted that the damage to the body has not affected the car's usefulness or its drivability". *Id.*

 Similarly, in the present case, the Plaintiff does not assert that the car is currently, or was at some point, not drivable as a result of the alleged defects.[1] Rather, Plaintiff states that in his opinion, the vehicle is not safe to drive, but he fails to point to any evidence that factually supports this belief. In fact, Plaintiff admitted that he drove the vehicle on a trip out of town just before his deposition in April 2004 and experienced no concerns with the vehicle on that trip. Hines Dep. at 27–28, 33–34. Without any substantive evidence that the car was not merchantable, it would be unreasonable speculation for a

jury to conclude that the Defendant breached the implied warranty.

In sum, because Plaintiff has offered no evidence to support his claim for breach of warranty, written or implied, under Georgia contract law, Defendant's Motion for Summary Judgment is GRANTED with respect to Plaintiff's state law breach of warranty claims.

### 3. Revocation of Acceptance

Pursuant to O.C.G.A. § 11–2–608(1)(b), a "buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it [w]ithout discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." Defendant argues that there can be no revocation of acceptance under Georgia law because there is no privity of contract between Plaintiff and Defendant. According to Defendant, because there is no sales contract between MBUSA and Plaintiff, there is nothing to revoke. Plaintiff, on the other hand, argues that privity is not required for the revocation.

This Court has found no case applying Georgia law allowing a plaintiff to seek such a remedy against a manufacturer with whom the plaintiff is not in privity of contract. Plaintiff has cited to none.[2] Furthermore, this Court notes that the majority of courts who have addressed the question of whether revocation is available

---

1. Although Plaintiff does not make the argument, this Court notes that Plaintiff's vehicle was not driveable on July 12, 2003 when the seat back would not latch. Even assuming such a defect rendered the vehicle inoperable, however, Plaintiff has offered no evidence showing that the defect existed at the time of purchase as required under Georgia Law. In fact, it is undisputed that at the time of purchase, the seat back was not defective, as

Plaintiff was able to drive the vehicle with no seat back problems for over two months.

2. Plaintiff cited *Studebaker v. Nail*, 82 Ga.App. 779, 62 S.E.2d 198 (1950) in support of the argument that privity is not required for revocation. Because the plaintiff in *Studebaker* was not seeking to revoke acceptance of the sales contract, the case misses the point.

against a manufacturer with whom the buyer has not dealt directly have held that the buyer has no such entitlement.[3] Revocation of acceptance has the effect of returning the buyer and seller to the positions they were in before the transaction. Allowing a buyer to pursue this remedy against the manufacturer, rather than the seller, does not achieve this result. Indeed, revocation is inextricably connected to the contractual relationship between a buyer and a seller. If revocation of acceptance is the remedy Plaintiff ultimately desired, then Plaintiff needed to file suit against the seller.

 Plaintiff's claim for revocation fails for another reason independent of privity. "[A] buyer who purports to revoke his acceptance of goods may be found to have re-accepted them if, after such revocation, he performs acts which are inconsistent with the seller's ownership of the goods." *Fiat Auto U.S.A. v. Hollums,* 185 Ga.App. 113, 115, 363 S.E.2d 312 (1987); *see also Olson v. Ford Motor Co.,* 258 Ga.App. 848, 850, 575 S.E.2d 743 (2002). Subsequent to his letter of October 28, 2003, Plaintiff continued to drive the vehicle, pay taxes on the vehicle, and insure it. As recent as two weeks prior to his deposition on April 30, 2004, Plaintiff drove the vehicle to and from Nashville, even though he had another vehicle. Plaintiff's post-revocation acts constituted exercises in ownership by him and acts inconsistent with the seller's ownership. *See* O.C.G.A. § 11–2–606(1)(c). "Any action taken by the buyer, which is inconsis-

tent with his claim that he rejected the goods, constitutes an acceptance." U.C.C. § 2–606, Official Comment, par. 4. While the trier of fact may conclude that Plaintiff revoked his acceptance of the vehicle when he sent a letter on October 28, 2003, his continued use of the vehicle and the various acts of ownership he performed after the letter constituted, as a matter of law, the re-acceptance of the goods.

This Court, therefore, GRANTS Defendant's Motion for Summary Judgment with respect to Plaintiff's revocation claim under O.C.G.A. § 11–2–608.

### 2. *Magnuson–Moss Warranty Act*

 The MMWA allows a consumer who is damaged by the failure of a supplier, warrantor, or service contractor, to comply with any obligation under … a written warranty [or] implied warranty … [to] bring suit for damages and other legal and equitable relief. 15 U.S.C. § 2310(d)(1). The parties agree that the MMWA "calls for the application of state written and implied warranty law, not the creation of additional federal law." *See, e.g., Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1011–12 (D.C.Cir.1986) ("state warranty law lies at the base of all warranty claims under Magnuson–Moss"); *see also Sharpe v. General Motors Corp.,* 198 Ga. App. 313, 314, 401 S.E.2d 328 (1991) (Magnuson–Moss Warranty Act "relates to damages, not liability, and provides for consumers' recovery of costs and attorney's fees in successful actions for

---

**3.** *Seekings v. Jimmy GMC of Tucson, Inc.,* 130 Ariz. 596, 638 P.2d 210 (1981); *Henderson v. Chrysler Corp.,* 191 Mich.App. 337, 477 N.W.2d 505 (1991); *Ayanru v. General Motors Acceptance Corp.,* 130 Misc.2d 440, 495 N.Y.S.2d 1018 (1985); *Alberti v. Manufactured Homes, Inc.,* 329 N.C. 727, 407 S.E.2d 819 (1991); *Wright v. O'Neal Motors, Inc.,* 57 N.C.App. 49, 291 S.E.2d 165 (1982); *Noice v. Paul's Marine & Camping Center,* Inc., 5 Ohio App.3d 232, 451 N.E.2d 528 (1982); *Clark v. Ford Motor Co.,* 46 Or.App. 521, 612 P.2d 316 (1980); *Gasque v. Mooers Motor Car Co., Inc.,* 227 Va. 154, 313 S.E.2d 384 (1984) (since the remedy of revocation cancels the contract, restores title and possession to seller, and the purchase price to the buyer, and returns the parties to the status quo ante, manufacturer, having no part in the sales transaction, has no role to play in action).

breaches of warranty *under state law*") (emphasis in original). Indeed, the MMWA expressly defines "implied warranty" as "an implied warranty arising under State law ... in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7).

█ To be sure, the MMWA contains substantive provisions other than breach of warranty claims. For example, the MMWA provides for minimum content standards for limited warranties and limits the content of written disclaimers. 15 U.S.C. § 2304, § 2308. Plaintiff, however, does not allege any violation of the substantive provisions of the MMWA, but only alleges breaches of both written and implied warranties. The MMWA authorizes recovery by a consumer—who prevails in a breach of warranty action—of actual costs and expenses, including attorney fees. To recover under the MMWA, therefore, Plaintiff must show that Defendant breached written and implies warranties arising under Georgia law. 15 U.S.C. § 2310(d)(2). As discussed previously, Plaintiff has offered no evidence to support a breach of warranty claim under Georgia law.

█ Plaintiff also seeks revocation of the sales pursuant to MMWA § 2310(d) of the MMWA, which provides a broad range of remedies for violations of the Act's substantive provisions and for breach of warranty claims. As previously discussed, Plaintiff does not allege any violation of substantive provisions of the MMWA, nor do Plaintiff's breach of warranty claims survive summary judgment. Because revocation is available under the MMWA only as a remedy, and there is no evidence that Defendant is liable for any breach, Plaintiff is not entitled to revocation under the MMWA.

Defendant's Motion for Summary Judgment with respect to Plaintiff's MMWA claims, therefore, is GRANTED.

IV. *Defendant's Motion to Strike Portions of Plaintiff's Affidavit Related to Vehicle Valuation [# 35] and Defendant's Motion to Strike, or in the alternative, Exclude the Expert Witness Testimony of Pat Rossiter [# 38]*

Defendant has moved for this Court to exclude paragraphs 17 through 25 of Plaintiff's Affidavit, where Plaintiff offers new testimony as to the allegedly defective vehicle's purported value at the time of sale as evidence of damage. In addition, Defendant has moved this Court to strike or exclude the testimony of Pat Rossiter ("Rossiter"), identified by Plaintiff as an expert witness on October 5, 2004, two months after Defendant filed its Motion for Summary Judgment. In his opinion report, Rossiter concluded that "based on the service problems that Edward Hines experienced with this vehicle combined with the cost of reconditioning," the "value of the vehicle is $90,000."

Having found Defendant not liable for any of Plaintiff's claims, the question of damages and evidence thereof is moot. Both of Defendant's evidentiary motions, relating to the question of damages, therefore, are DENIED as moot.

Also, Plaintiff's Motion for Leave to File Surresponse in Opposition to Motion to Defendant's Motion to Strike Portions of Plaintiff's Affidavit Related to Vehicle Valuation [# 41] is also DENIED as MOOT.

V. *Conclusion*

Because Plaintiff has offered no evidence to support his claim for breach of warranty or revocation under Georgia contract law or the Magnuson–Moss Warranty Act, Defendant's Motion for Summary Judgment [# 26] is GRANTED. Defendant's Motion to Strike Portions of Plaintiff's Affidavit Related to Vehicle Valuation [# 35] and Defendant's Motion to Strike,

or in the alternative, Exclude the Expert Witness Testimony of Pat Rossiter [# 38] are DENIED as MOOT. Plaintiff's Motion for Leave to File Surresponse in Opposition to Defendant's Motion to Strike Portions of Plaintiff's Affidavit Related to Vehicle Valuation [# 41] is also DENIED as MOOT. The Clerk is DIRECTED to enter judgment for the Defendant.